[No. 3720. Decided October 9, 1901.]

A. J. Hazeltine, *as Trustee, Respondent*, v. F. G. Blake, *as Treasurer of City of Olympia, Appellant.*

MUNICIPAL CORPORATIONS — INDEBTEDNESS — CONSTITUTIONAL LIMI-
TATION — INTERPRETATION.

Under art. 8, § 6, of the constitution, which prohibits a city from becoming indebted in any manner to an amount exceeding 1½ per centum of its taxable property as shown by its last assessment for city purposes, without the assent of three-fifths of the voters therein voting at an election to be held for that purpose, and not to exceed 5 per centum in all, even where such assent is obtained, the indebtedness which a city is thus authorized to incur falls into two classes—the first comprising that which may be incurred without a vote up to 1½ per centum of its taxable property, and the second that which may be incurred by vote in excess of 1½ per centum and up to 5 per centum of its taxable property; consequently where a city has authorized a debt of the second class, no portion of such debt can be taken into account in computing the amount of indebtedness under the first class, unless it clearly appears that it was the intent of the

city, at the time of authorizing indebtedness in excess of the 1½ per centum limitation, to have some portion of such authorized indebtedness charged against the first class of indebtedness.

Appeal from Superior Court, Thurston County.—Hon. THOMAS CARROLL, Judge. Affirmed.

*Troy & Falknor* and *M. G. Royal,* for appellant.

*George H. Funk,* for respondent.

The opinion of the court was delivered by

FULLERTON, J.—The question involved in this action is the validity of a warrant drawn by the city of Olympia upon its sewer fund in payment for certain sewer pipe purchased by the city for, and used by it in the construction of, a city sewer. It is claimed by the appellant that the city was indebted at the time it purchased the material for which the warrant was issued beyond the limit permitted by the constitution and statutes, and therefore incapable of entering into a valid contract creating further indebtedness.

The constitution of this state (art. 8, § 6) prohibits a city from becoming indebted in any manner to an amount exceeding one and one-half per centum of its taxable property as shown by its last assessment for city purposes, without the assent of three-fifths of the voters therein voting at an election to be held for that purpose, and, in cases where such assent is obtained, to an amount exceeding five per centum in all. From the facts disclosed by the record it appears that at the time the contract was entered into which gave rise to the issuance of the warrant in question the city of Olympia had outstanding obligations amounting to $243,561.78; that of these obligations $200,000 consisted of bonds issued with the assent of the voters (with the exception hereafter noted),

and the balance, $43,561.78, of warrants drawn upon its
various funds, issued without the assent of the voters;
that at the same time the city had assets, consisting of
unpaid taxes and cash in its various funds, amounting
to the sum of $66,300.32; and that the value of its tax-
able property, as shown by its last assessment for city
purposes, was $4,988,733.   The indebtedness for which
the warrant was issued was incurred without the assent
of the voters of the city, and belongs to the first limitation
mentioned.   Its validity, therefore, is determined by de-
termining the amount of the indebtedness of the city prop-
erly chargeable to that limitation at the time the contract
was entered into which gave rise to its issuance.   From
the above recitals showing the financial condition of the
city, at that time, it is apparent that the indebtedness of
the city, unless its bonded indebtedness is included as a part
thereof, did not of itself, nor when taken with the amount
of the warrant, equal one and one-half per centum of its
taxable property as shown by its last assessment.   It is
contended by the appellant that every debt of a munici-
pality, no matter by what authority incurred, must be
taken as a part of the first limitation, and that if these
debts equal one and one-half per centum of its taxable
property, the municipality is without power to incur a
further indebtedness without the assent of the voters.   As
sustaining this contention the case of *Hunt v. Fawcett,*
8 Wash. 396 (36 Pac. 318), is cited and relied upon.
While in the course of the opinion in that case some lan-
guage was used which would seem to support the appel-
lant's claim, the case was said in the later one of *State
ex rel. Barton v. Hopkins,* 14 Wash. 59 (44 Pac. 134,
550), not to lay down the doctrine contended for.   It was
there held that a bonded debt of a county, incurred with

the assent of the voters for the purpose of building a court
house, had no relation to the one and one-half per centum
of indebtedness then owing by the county, or which might
thereafter be incurred by it within that limitation; the
court saying that whether an indebtedness incurred with
the assent of the voters of a municipality was to be treated
as an indebtedness belonging to its first or second limita-
tion must be determined by the intent which is made to
appear by the ratification of the proposition submitted, and
that this intent must be gathered from the form of the
proposition interpreted in the light of the facts existing
at the time of the submission. This case was cited with
approval in the still later case of *Graham v. Spokane,* 19
Wash. 447 (53 Pac. 714); and, while no discussion of the
precise question was entered upon in the opinion, the ef-
fect of the decision was to affirm the proposition that an
indebtedness could be incurred by a city which should re-
main independent of its one and one-half per centum limi-
tation. The wisdom of this construction of the constitu-
tion we do not now feel called upon to discuss. It must
be adhered to as announcing a rule of property. On the
faith of this construction many debts have been incurred
by municipalities which the contrary rule would render
invalid, to the loss of innocent persons who have every
moral right to be protected.

The real inquiry, then, is, was it intended that the debt
evidenced by the bonds in question should form any part
of the first limitation? These bonds represent two sev-
eral issues. The first was for $45,000, and was assented
to in part by the requisite number of the voters of the city
of Olympia, at an election held on the 28th day of April,
1890, voting upon a "proposition to allow the city coun-
cil to incur an indebtedness for general municipal pur-

poses to the amount of five per centum of the assessed valuation of all the property within the limits of said city." At that time the aggregate indebtedness of the city amounted to the sum of $37,524.85, its assets to the sum of $5,727.29, and the value of its taxable property, as shown by its last assessment, was $1,144,641. The second issue was for the sum of $155,000, and was assented to by the requisite number of voters of the city at an election held on the 17th day of August, 1891, voting upon a proposition submitted in the following form: "Shall the city of Olympia for municipal purposes borrow $155,-000, and issue its negotiable bonds therefor?" At that time the aggregate indebtedness of the city, exclusive of the first issue of bonds, amounted to the sum of $113,-056.49, its assets to the sum of $45,815.41, and the value of its taxable property, as shown by its last assessment, was $5,597,455. It will thus be seen that at the time of the first issue of bonds the city had outstanding warrants in excess of the amount to which it could lawfully become indebted without the assent of the voters amounting to nearly $15,000, and that at the time of the last issue, the margin between the amount to which it might lawfully become indebted without the assent of the voters and the amount to which it was indebted, excluding the first bond issue, was something less than $17,000. Tested by the reasoning of the case of *State ex rel. Barton v. Hopkins, supra,* it is clear that the first issue of bonds up to the amount that could be lawfully issued within the second limitation, must be held to belong to that limitation. Here, as there, the warrants then outstanding against the city filled to overflowing the limit to which it could become indebted without the assent of the voters. Before any further indebtedness could be incurred, the second limitation must be trenched upon, and, as the status of a debt

of a municipality is fixed at the time of and by the terms
of its authorization, this debt of necessity belongs to the
second limitation, as no power then existed to make it a
part of the first.

The intent as to the second issue seems equally clear.
No assent of the voters is required by a municipality to
enable it to incur a debt within the first limitation. This
it may do without such assent, and it may cause such
indebtedness to be evidenced by warrants drawn upon
its treasurer, or by bonds issued pursuant to the require-
ments of the statutes. The assent of the voters is required
only in cases where it is sought to incur a debt within the
second limitation. Whenever, therefore, a municipality
asks and obtains the assent of its voters to the incurring of
a debt, the presumption arises from the very act itself
that it is the intent to incur a debt within that limitation
within which a debt can not be incurred without such
assent; and, although this presumption is not conclusive
in every instance, it must be so where it is not overcome
either by an express declaration to the contrary or such a
state of facts as will leave the question equally free from
doubt. In the case before us there is no express declara-
tion of the intent. It is shown, however, that the com-
bined issue of bonds is greater than three and one-half per
centum of the value of the taxable property as shown by
the last assessment preceding the second issue, and from
this it is argued that it could not have been the intent to
put them alone within this limitation. But this over-
issue occurred at the time of the first issue. The value
of the taxable property of the city at that time—the
one and one-half per centum limitation being full—per-
mitted a further indebtedness of only $40,062.43½,
while the bond issue was for $45,000. If this difference
be deducted from the total amount, the remainder is well

within the limitation. While it appears from the record before us that this overissue can form no part of the indebtedness belonging to the second limitation, the status of the remainder is not affected by that fact. The overissue was the act of the officers having in charge the execution of the power conferred by the assent of the voters, and their acts cannot affect the validity or status of such of the bonds as were properly issued within the power conferred. But we do not wish to be understood as expressing an opinion as to the validity or invalidity of this overissue. It is not necessary to do so in order to determine the validity of the warrant in question, for, if we add this surplus sum to the general indebtedness owing by the city belonging to the first limitation, the warrant is still within that limitation.

We conclude, therefore, that so much of the debt evidenced by the bonds in question as was properly incurred under the authority conferred by the assent of the voters belongs to the second limitation, and that the warrant in question is a valid obligation of the city of Olympia, which must be paid, in the order of its issuance, out of the fund set apart for the payment of obligations belonging to its class.

The judgment of the lower court is affirmed.

REAVIS, C. J., and DUNBAR and ANDERS, JJ., concur.