[No. 10218.   Department Two.   April 13, 1912.]

WARREN SHEA, *Respondent*, v. SKAGIT COUNTY, *Appellant*.[1]

COUNTIES — BONDS — PURPOSES—REPAIR OF COUNTY ROADS—STAT-
UTES—CONSTRUCTION.   Under the rule that the authority to issue
bonds will not be inferred, and that general statutory provisions
yield to subsequent special ones, the specific provisions of Rem. &
Bal. Code, § 5094, authorizing a county to issue bonds for the pur-
pose of making new roads or improving established roads, excludes
the idea that it may issue bonds for the general repair of roads; and
the law on the particular subject not authorizing the same, such
bonds could not be issued under the general law, Rem. & Bal. Code,
chapter 12, § 5086 *et seq.*, previously passed at the same session of
the legislature, authorizing a county to issue bonds for strictly
county purposes.

Appeal from a judgment of the superior court for Skagit
county, Joiner, J., entered December 27, 1911, in favor of
the plaintiff, upon overruling a demurrer to the complaint,
in an action for an injunction.   Affirmed.

*Augustus Brawley*, for appellant.

*Preston & Thorgrimson*, for respondent.

MOUNT, J.—Plaintiff, as a taxpayer, brought this action
to enjoin Skagit county from issuing bonds in the sum of
$100,000, for the purpose of general repairing of the roads
of said county.   The court below overruled the defendant's
demurrer to the complaint.   The defendant elected to stand
upon the demurrer.   The order was thereupon issued as
prayed for in the complaint.   The county has appealed.

The question presented in this case is whether a county is
authorized to borrow money by the issuance and sale of bonds
for the purpose of general repairing of existing roads of
such county.   The statute, at chapter 12, Rem. & Bal. Code,
§ 5085, provides that each county of the state is authorized
to contract indebtedness for general county purposes, not
exceeding one and one-half per centum of the taxable prop-

[1]Reported in 122 Pac. 1061.

erty of such county. Section 5086 provides that each county may contract indebtedness *for strictly county purposes* in excess of one and one-half per centum, but not exceeding five per centum of the taxable property, when three-fifths of the voters of said county assent thereto at an election held for that purpose. Section 5087 provides as follows:

"Whenever any debt is incurred under the provisions of the first or second sections of this chapter, or whenever the board of commissioners of any county shall submit to the voters of this county, at an election to be held under the provisions of the last preceding section, the question of issuing bonds to procure money for strictly county purposes, and three-fifths of the voters of such county having assented thereto, and the amount of said bonds, together with the already existing county indebtedness, not exceeding five per centum of the taxable property of said county, to be ascertained as provided in the last preceding section of this chapter, then the board of commissioners of such county is authorized and empowered to issue its negotiable bonds in the name of the county for the purposes for which such election was held."

The next section provides for holding the election and issuance of the bonds. Chapter 13, at § 5094, provides:

"The board of county commissioners for any county may, whenever a majority thereof shall so decide . . . submit to the *bona fide* voters of their county the question whether the said board shall be authorized to issue coupon bonds to the amount not to exceed five per centum of the taxable property in said county, bearing a rate of interest not exceeding six per cent per annum, and payable and redeemable at a time fixed by the said board of county commissioners, for the purpose of making a new road or roads, or bridge or bridges, or improving established roads within said county."

The next section provides for holding the election and issuance of the bonds. The next succeeding section is as follows:

"§ 5096. The commissioners must give notice in some newspaper, having a general circulation in said county for a period of at least four weeks next preceding the date of the

election, setting forth the proposition as to amount, dura-
tion, and terms of the bonds to be issued, and state in such
notice the roads or bridges to be built or improved."

The appellant apparently concedes that these bonds are
not authorized under the provision of chapter 13 above
quoted, but contends that they are authorized under the pro-
visions of § 5087 of chapter 12, because, it is argued, that
the repairing of roads is a *strictly county purpose.* These
two chapters were passed by the legislature at the same ses-
sion in 1890, Laws 1890, pages 37 and 40. Chapter 12 was
approved on March 21, 1890, and chapter 13 was approved
on March 23, 1890. If the repair of roads in a county is
a strictly county purpose, the construction of new roads or
the improvement of established roads in a county is also a
strictly county purpose, and the passage of chapter 13 was
therefore a mere idle thing. It is, no doubt, true that the
construction of a new road or the improvement of an estab-
lished road is different from the general repair of existing
roads. Elliott, Roads and Streets (2d ed.), § 576.

But if it is the duty of the county to construct, improve,
and repair roads, as provided in §§ 5575 to 5585, inclusive,
Rem. & Bal. Code, it is difficult to understand how one of
these items may be a strictly county purpose and the others
not such purpose. It is apparent, we think, that, when the
legislature passed chapter 13, it was intended that the con-
struction, improvement, and repair of roads within the county
should not be classed as a strictly county purpose, as that
phrase was used in the preceding chapter; that while the
bonds might be issued when authorized by the voters for the
construction and improvement of roads, such bonds were not
authorized for the repair of roads.

"The rule seems to be that, whenever the power to issue
bonds is called in question, the authority to issue must be
clearly shown, and will not be inferred from uncertain data,
and can only be conferred by language which leaves no rea-

sonable doubt of an intention to confer it." 2 Dillon, Mun. Corp. (5th ed.), § 883.

See, also, *State ex rel. School Dist. etc. v. Moore*, 45 Neb. 12, 63 N. W. 130; *Coffin v. Board of Com'rs of Kearney County*, 57 Fed. 137.

"The rule is well settled that general provisions of a statute must yield to subsequent special ones." *McKnight v. McDonald*, 34 Wash. 98, 74 Pac. 1060.

"And so, where there are, in an act, specific provisions relating to a particular subject, they must govern, in respect to that subject, as against general provisions in other parts of the statute, although the latter, standing alone, would be broad enough to include the subject to which the more particular provisions relate." Endlich, Interpretation of Statutes, p. 288.

If the statute relied upon by the appellant is broad enough to include the authority of the county to issue bonds for the repair of roads, the subsequent special statute authorizing "county commissioners to issue bonds for road purposes" seems to make it clear that such authority is limited to making new roads or bridges or improving established roads, and excludes the idea that such bonds may be issued for the mere repair of roads.

The trial court was therefore right in sustaining the demurrer. The judgment is therefore affirmed.

DUNBAR, C. J., FULLERTON, and ELLIS, JJ., concur.