[No. 15612. *En Banc.* December 15, 1919.]

THE STATE OF WASHINGTON, *on the Relation of Bellingham School District No. 301, of Whatcom County, Plaintiff,* v. C. W. CLAUSEN, *State Auditor, Defendant.*[1]

SCHOOLS AND SCHOOL DISTRICTS (34)—BONDS—POWER TO ISSUE—CONDITIONS—STATUTES. After the taking effect on June 12 of Laws of 1919, p. 216, § 12, amending Rem. Code, § 4607, and providing that school district bonds for erecting permanent buildings shall be made payable in semi-annual installments, the school district has no power to issue or sell bonds payable in ten years, in conformity to the former law, notwithstanding the issue was authorized by an election and adjudged by a court to be valid before the amendment of 1919 took effect.

CONSTITUTIONAL LAW (72)—OBLIGATION OF CONTRACTS—CONTRACTS OF STATE AND SCHOOL DISTRICTS. Laws of 1919, p. 216, § 12, amending Rem. Code, § 4607, and changing the requirements as to school district bonds, did not impair the obligation of any contract as to contemplated bonds that had been previously authorized under the former law, where such bonds had not been issued or the state's bid therefor accepted prior to June 12, 1919, when the amendment took effect.

JUDGMENT (227, 229)—CONCLUSIVENESS — BAR — MATTERS NOT IN ISSUE OR WHICH COULD NOT HAVE BEEN ADJUDICATED. A judgment on the merits to the effect that a school district was legally authorized by vote of the electors to issue bonds conditioned in compliance with the law then in effect, entered prior to the taking effect of Laws of 1919, p. 216, § 12, amending Rem. Code, § 4607, is not an adjudication as to the right of the school district to issue and sell said bonds after the taking effect of the amendatory act which changed the requirements as to the conditions of the bond.

Application filed in the supreme court October 25, 1919, for a writ of mandamus to compel the state auditor to accept certain school district bonds and issue a warrant in payment therefor. Denied.

[1]Reported in 186 Pac. 319.

*Kellogg & Thompson,* for relator.

*The Attorney General* and *G. H. Bucey,* for respondent.

Parker, J.—This is an original proceeding in this court, wherein relator school district seeks a writ of mandate directed to the defendant, state auditor, commanding him to accept negotiable bonds of the school district in the sum of $75,000, and also to issue to the school district in payment therefor a warrant for that amount against the permanent school fund of the state, in pursuance of a bid for such bonds made by the officers of the state authorized to invest the permanent school fund, and the acceptance of such bid by the directors of the school district. The auditor has refused to accept such bonds and issue a warrant in payment therefor, contending that, at the time of the tendering and acceptance of the bid, and at all times since then, the district has not possessed any legal authority to issue such bonds.

The controlling facts are not in dispute, and may be summarized as follows: On May 24, 1919, there was regularly held in the school district a special election, at which it was decided, by the required vote of the electors of the district, that the district borrow the sum of $75,000 and issue its negotiable interest-bearing bonds evidencing its indebtedness in that sum. To make certain just what the directors of the district proposed and submitted to the electors of the district, we quote from the complaint, as follows:

"On the 29th day of April, 1919, the board of directors of plaintiff and relator did, by resolution, duly resolve, among other things, that the sum of $75,000 be borrowed by said plaintiff and relator with which to provide more adequate facilities for said school district, by the erection of one or more school build-

ings to be used for school purposes in conjunction with the present school buildings upon the several sites owned by said school district, and to provide the school buildings of said district with necessary furniture, apparatus and equipment, and make betterments thereon, and to improve the school grounds surrounding said buildings, and to issue bonds therefor, such bonds to be payable in twenty years after the date of their issue, but the same to be payable and redeemable at the option of the said school district at any time after ten years from the date of their issue, and to draw a rate of interest not to exceed six per cent per annum, interest to be payable annually or semi-annually.''

While this allegation of the complaint refers to the original resolution of the board of directors, other allegations of the complaint show that this was the proposition submitted to, and voted upon by, the electors. This proposition, and the adoption thereof by the electors, was in accord with the powers of the district as prescribed by § 4607, Rem. Code, as then in force, relating to the borrowing of money and issuance of bonds by school districts. The concluding language of that section, as then in force, and here to be particularly noticed, is as follows:

''the bonds so issued shall bear a rate of interest not to exceed six per cent per annum, interest payable annually or semi-annually, payable and redeemable at such time as may be designated in the bonds, but not to exceed twenty (20) years from date of issue.''

Soon after that election, one Lee, a resident and taxpayer of the school district, commenced an action in the superior court for Whatcom county, seeking to have the directors enjoined from issuing any bonds as proposed and voted for, contending that there were irregularities in the calling and holding of the election rendering it void and of no effect. Thereafter, on June 6, 1919, that action came regularly on for hearing on

the merits in the superior court, when a judgment was rendered in that court denying the relief prayed for and deciding, in effect, that the election was regularly called and held, and that the directors could, in pursuance thereof, legally borrow money and issue bonds of the district in the sum of $75,000, as proposed by them and voted by the electors. Thereafter, on June 10, 1919, Lee appealed from that judgment to this court, wherein it was affirmed on July 3, 1919. *Lee v. Bellingham School District No. 301,* 107 Wash. 482, 182 Pac. 580. On June 12, 1919, there went into force and became effective an act of the legislature amending § 4607, Rem. Code, relating to the borrowing of money and the issuance of bonds by school districts, providing, among other things, as follows:

"All school district bonds shall be payable within a period of not to exceed twenty-three years from date, except when issued by districts of the first class for the purpose of acquiring building or playground sites, or of erecting buildings of a permanent character, in which case they shall be made payable in semi-annual installments, beginning the third year, over any period not exceeding forty years from date." Laws of 1919, page 216, § 12.

Relator is a school district of the first class; so it is plain that this quoted language of the amendatory act relates to the issuance of bonds by this district for the erection of buildings of a permanent character, which, we have seen, is the purpose for which at least a large portion of these bonds are proposed to be issued. Therefore the proposed bonds, if issued, will be materially different from bonds authorized to be issued by school districts of the first class for buildings of a permanent character under § 4607, as amended, in that such proposed bonds will not be "payable in semi-annual installments," as the section, as amended, pro-

vides such bonds shall be. On July 12, 1919, the directors of the district, upon invitation of bids for the purchase of the bonds proposed and voted to be issued, received and accepted a bid therefor made by the officers of the state authorized to invest the permanent school fund, such bid being made in behalf of that fund, which bid was, in substance, an offer to purchase the bonds at their face value, the bonds to bear interest at the rate of four and three-fourths per cent per annum. Thereafter, looking to the consummation of the sale of such bonds in compliance with that accepted bid, and the payment therefor from the permanent school fund, the directors of the district demanded of the state auditor that he accept such bonds and issue his warrant to the district against the permanent school fund in payment therefor. This the auditor refused to do, and thereafter the school district commenced this proceeding.

It is contended in behalf of the auditor that his acceptance of the bonds proposed and voted to be issued, for which the officers of the state authorized to invest the permanent school fund bid for the purchase of, and his issuance of a warrant in payment thereof, would be an illegal act on his part, in that such act would be the acceptance of and paying for bonds which the school district, at the time of accepting the bid, July 12, 1919, and at all times since June 12, 1919, the date of going into force of the amendatory act of 1919 (Laws 1919, p. 216, § 12), had no power to lawfully issue. We feel constrained to hold that this contention must be sustained.

It is elementary law that school districts, under our system of government, possess only such powers as may be conferred upon them by legislative enactment. Whether or not such districts shall possess the power to borrow money and issue negotiable bonds evidenc-

ing their debts so created, is wholly a matter of legislative will. It follows, as a matter of course, that such power may, by the legislature, be granted or withheld, and may, by the legislature, be taken away or limited after once being granted. Dillon, Municipal Corporations (5th ed.) §§ 106, 889. Such power of the legislature is subject only to the limitation that it shall not be exercised so as to impair the obligation of contracts. That no contractual rights of any nature accrued with reference to this proposed bond issue prior to the going into effect of the amendatory act on June 12, 1919, we think is too plain to admit of argument to the contrary. The proposed bonds were not issued or even offered for sale by the district prior to June 12, 1919. The bid for the bonds, made by the officers of the state authorized to invest the permanent school fund, was not accepted until July 12, 1919. Manifestly no contractual rights whatever in favor of the school district or the officers of the state seeking the purchase of the bonds as an investment of the permanent school fund could, in any event, have accrued until the acceptance of the bid, at which time the amendatory act of 1919 had been in full force and effect for a period of one month; which amendatory act expressly provides that:

"All school district bonds  .  .  .    when issued by districts of the first class for  .  .  .    erecting buildings of a permanent character,  .  .  .    shall be made payable in semi-annual installments, beginning the third year, over any period not exceeding forty years from date." Laws 1919, p. 216, § 12.

It seems to us that citation of authority is hardly necessary to support the view that, since the going into effect of the amendatory act, on June 12, 1919, this school district has not possessed the power to issue the bonds as proposed and voted, and that no

contractual obligations arose prior to the going into
force of that act which could be impaired by giving it
full force and effect from and after that date.  We
have, however, no less an authority than the supreme
court of the United States supporting this view.  In
the case of *Town of Concord v. Portsmouth Savings
Bank,* 92 U. S. 625, there was involved the question of
the power of the town to make a donation in aid of a
prospective railroad to run through the town.  The
donation was decided upon by the requisite vote of the
electors of the town at an election held therein to de-
termine the question, in pursuance of a statute of the
state of Illinois then in existence.  After the town had
so decided to make the donation, but before the dona-
tion was actually made, the constitution of Illinois was
so amended as to prohibit the making of such a dona-
tion.  In that case the court squarely held that the
power to make the donation was thus taken away from
the town, although it was lawfully voted and could
have been lawfully made but for the divesting of the
town of the power to make it, before it was actually
consummated; and the bonds of the town, issued to
consummate the donation, after the town was divested
of the power to make it, were held void.  The decision
of this court in *Seymour v. Tacoma,* 6 Wash. 427, 33
Pac. 1059, is in harmony with this view of the law.
That case involved the constitutional debt limit of the
city of Tacoma.  When the issuance of the bonds was
authorized, their total, if issued at that time, would
have been within the constitutional debt limit of the
city as measured by its then assessed valuation, but
before the bonds were actually issued a new assess-
ment became effective, and it was held that the new
debt limit thereby created, being less than the former,
would govern, and the total issue of the bonds limited
accordingly.  We are quite convinced that the school

district does not now possess the power to issue the bonds as proposed and for which the bid in question was made, and that the state auditor did his legal duty when he refused to consummate the proposed sale of the bonds by accepting them and issuing a warrant in payment therefor against the permanent school fund of the state.

Counsel for the school district now contend that the judgment rendered in the case of Lee against the district became *res judicata* and binding upon all of the taxpayers of the district as to the validity of the bonds proposed to be issued, and that the state auditor has no different rights in that behalf than a taxpayer of the district would have. Counsel invoke the general rule that, where a citizen and taxpayer brings an action in behalf of himself and all other taxpayers of the municipality, seeking the enjoining of the issuance of bonds of the municipality upon the grounds that the issuing of them would be illegal and void, and final judgment is rendered in such action, upon the merits, such judgment becomes final and binding upon all the taxpayers of the district as well as the district itself, citing *Stallcup v. Tacoma,* 13 Wash. 141, 42 Pac. 541, 52 Am. St. 25, and *State ex rel. Forgues v. Superior Court,* 70 Wash. 670, 127 Pac. 313. We may concede for present purposes, that the judgment in the *Lee* case became binding upon the district and all the taxpayers therein, and even upon the auditor, in so far as the power to issue the proposed bonds at the time, or any time prior to June 12, 1919, is concerned; but that, as we view it, will not aid the district in this case. That judgment was rendered in the superior court on June 6, 1919, and, as the law then existed, it was correct, as afterwards held by this court. Manifestly the question here involved, that is, the question of the power possessed by the school district after the

going into force of the amendatory act on June 12,·
1919, was not, and could not have been, litigated in
that action. The only question of power possessed by
the school district determined by the judgment in that
action, was the question of the power possessed by the
school district at the time the judgment was rendered,
which was before the amendatory act became effective.
Nor does the fact that the decision of this court affirm-
ing the judgment of the superior court, rendered after
the amendatory act of 1919 went into force, make the
situation any different. The decision of this court
was an affirmance of the judgment of the superior
court as of the time that judgment was rendered. It
was not a decision, and could not have been a decision,
as to what power the school district possessed as to
the borrowing of money and the issuing of negotiable
bonds after the amendatory act became effective on
June 12, 1919. (Laws 1919, p. 216, § 12.)  We are of
the opinion that the judgment in the *Lee* case was in
no sense *res judicata* of the question we are here called
upon to decide.

The writ is denied.

ALL CONCUR.