[No. 15747.   Department One.   May 13, 1920.]

# G. F. RUST, *Appellant,* v. KITSAP COUNTY *et al.,* Respondents.[1]

CONSTITUTIONAL LAW (39)—JUDICIAL POWERS—ENCROACHMENT ON LEGISLATURE. The question whether an indebtedness is for a public purpose is ultimately a question for the courts, although a legislative declaration on the subject is entitled to great weight and should be upheld unless it appears beyond reasonable doubt to be mere pretense or dissimulation.

COUNTIES (62, 81)—LIMITATIONS ON INDEBTEDNESS—SUBMISSION TO VOTERS—COUNTY PURPOSE. The construction of a county road is for a strictly county purpose, within Const. Art. 8, § 6, authorizing the issue of bonds by counties without vote of the people within the limitation of one and one half per centum of the taxable property of the county.

Appeal from a judgment of the superior court for Kitsap county, French, J., entered October 17, 1919, upon sustaining a demurrer to the complaint, dismissing an action to enjoin the issuance of bonds for county road purposes. Affirmed.

*Bryan & Garland,* for appellant.
*H. E. Gorman,* for respondents.

*The Attorney General, R. M. Burgunder, Assistant, Fred C. Brown,* and *Howard A. Hanson, amicus curiae.*

HOLCOMB, C. J.—Appellant sued to enjoin the commissioners of Kitsap county from issuing and selling $100,000 in bonds for the purpose of constructing, repairing and improving roads and for other general county purposes. The question of issuing bonds was not submitted to a vote of the people and comes within the one and one-half constitutional debt limit. The lower court sustained a demurrer to the complaint and, upon the refusal of plaintiff to plead further and

[1]Reported in 189 Pac. 994.

his election to stand upon his complaint, ordered the dismissal of the action.

The question is: Has a county the right to issue bonds for road purposes within the one and one-half per cent limitation without authorization from the people? In the pursuit of our inquiry we are first confronted with the case of *Shea v. Skagit County,* 68 Wash. 233, 122 Pac. 1061. In that case it was *not* decided, as contended in the briefs, that county commissioners were without power to issue bonds for the repair, construction or improvement of roads *without authorization from the people.* The issue of bonds was there submitted to a vote of the people. The notice of election failed to bring it within the terms of §§ 5094 to 5101-7, Rem. Code, being the county road and bridge bonds act, and it was contended that it came within the terms of §§ 5085 to 5093, Rem. Code, relating to bonds for county purposes. Since the latter act granted county commissioners authority to issue bonds, after submission to the people of the question of issuing bonds to procure money for *strictly county purposes,* and inasmuch as the legislature, when it passed the county road and bridge bonds act, evidenced its intention that the construction, improvement and repair of roads within the county should not be classed as a strictly county purpose, we held that the submission was not authorized under the act relating to bonds for county purposes, and that the county commissioners were, therefore, without any authority to issue the bonds.

The constitution, art. 8, § 6, after limiting the amount and manner of incurring indebtedness by any county, city, town, school district, or other municipal corporation, reads:

"Provided, that no part of the indebtedness allowed in this section shall be incurred for any purpose

other than strictly county, city, town, school district, or other municipal purposes: . . .''

The question of the nature of the purpose of a county indebtedness was, in the *Shea* case, predicated upon the determination of the legislature. Subsequent to the filing of the opinion in the *Shea* case, the legislature, in 1913, virtually reenacted the county road and bridge bonds act (Laws of 1913, ch. 25, p. 62; Rem. Code, §§ 5101-1 to 5101-7). In § 1 of that act it is provided:

"The constructing or improving of any and all such roads, or the aiding therein, is hereby declared to be a county purpose."

We are inclined to recede from the holding in the *Shea* case, and upon the question now being presented, it appears to us that whether a designated indebtedness is for a public purpose is in each case a proposition finally to be determined by the courts, and is not to be determined in the ultimate by the legislature. Otherwise the legislature could by its declaration contravene the plain constitutional provision. Since both the legislature and the courts are bound by the fundamental law, the constitution and the courts are the final interpreters thereof, and if it manifestly appeared on the face of an act that there was no possibility of a county purpose in the matter legislatively so declared, the legislative declaration would be mere pretense and dissimulation for no other purpose than to evade constitutional restrictions, and it would be the duty of the courts to so declare. *State ex rel. Brislawn v. Meath*, 84 Wash. 302, 147 Pac. 11; *State ex rel. Case v. Howell*, 85 Wash. 281, 147 Pac. 1162. There is ample authority to sustain this. The rule is stated in Abbott on Public Securities, § 101, p. 214, as follows:

"Whether the purpose is a public one for the expenditure of moneys is a question exclusively for the

courts to determine. Legislative bodies cannot be the judges of their own infraction of fundamental law.''

In Hainer, The Modern Law of Municipal Securities, § 128, p. 156, it is said:

''The question what is and what is not a public purpose, is one of law; and though, unquestionably, the legislature has large discretion in selecting the object for which taxes shall be laid, its decision is not final. In any case in which the legislature shall have clearly exceeded its authority in this regard, and levied a tax for a purpose not public, it is competent for any one, who, in person, or property, is affected by the tax to appeal to the courts for protection.''

But the legislative declaration is entitled to great respect and weight and will be upheld unless it plainly appears, beyond any reasonable doubt, to be mere pretense or dissimulation. *State ex rel. Case v. Howell, supra.*

In deciding the *Shea* case, it is contended, this court held in effect that, when the legislature enacted the special road bond act of 1890, it carved an exception out of the general bond act of 1890 by *requiring* that all bonds for the construction and improvement of roads must be authorized by the people. The answer to that interpretation of the former decision is found in the words of § 5094, being the first section of the act itself:

''The board of county commissioners for any county *may* . . . submit to the *bona fide* voters of their county,'' etc.

It is a matter of discretion and not mandatory upon the commissioners to submit the question to the voters.

There can be no question that the purpose of the indebtedness in the present case (the construction, repairing and improvement of roads and other general county purposes) is a public one, but the question may

be raised: Is it a strictly county purpose? It is a county purpose, it is true, but the constructing, repairing and improvement of roads is likewise a state function, and there may be room for argument that such work cannot be considered as a strictly county function, and that the word "strictly" limits the purpose to the county or city or other municipal corporation and to that corporation alone. In so far as the work is done by the particular municipal corporation it is strictly its purpose. Other municipal authorities might aid in the improvement, but the work is a precise county purpose. In this we find support in *Lancey v. King County*, 15 Wash. 9, 45 Pac. 645, 34 L. R. A. 817, which is cited with approval on this same proposition in *State ex rel. Board of Commissioners v. Clausen*, 95 Wash. 214, at page 239, 163 Pac. 744. Counties are political subdivisions of the state and the state may delegate to, and empower counties with, such public functions as are inherently or properly local, and within such powers and duties prescribed, such functions should be deemed to deal with strictly county purposes, although exercised concurrently with the state.

Having decided, as a question properly to be passed upon by this court, that the purpose of the indebtedness is a public one and a strictly county purpose and not in violation of § 6, art. 8, state constitution, is there authority in §§ 5085 and 5087, Rem. Code, for the county commissioners to incur this indebtedness and issue bonds of the county without vote of the people? Those sections read as follows:

"Sec. 5085. Limitation of County Indebtedness.— Each and every organized county of this state, and each and every county that may hereafter be organized in this state, is hereby authorized and empowered by and through its board of county commissioners to

contract indebtedness for general county purposes in any manner when they deem it advisable, not exceeding an amount, together with the existing indebtedness of such county, of one and one-half per centum of the taxable property in such county, to be ascertained by the last assessment for the state and county purposes previous to the incurring of such indebtedness.''

''Sec. 5087.    Commissioners May Issue Bonds, When, and to What Amount.—Whenever any debt is incurred under the provisions of the first or second sections of this chapter [§§ 5085 and 5086], or whenever the board of commissioners of any county shall submit to the voters of this county, at an election to be held under the provisions of the last preceding section, the question of issuing bonds to procure money for strictly county purposes, and three-fifths of the voters of such county having assented thereto, and the amount of said bonds, together with the already existing county indebtedness, not exceeding five per centum of the taxable property of said county, to be ascertained as provided in the last preceding section of this chapter [§ 5086], then the board of commissioners of such county is authorized and empowered to issue its negotiable bonds in the name of the county for the purposes for which such election was held.''

While the language employed in § 5085 would seem to render it plain that the county commissioners have the authority, § 5087 casts some doubt upon the question.

In *Hazeltine v. Blake,* 26 Wash. 231, 66 Pac. 394, the following language is employed by Justice Fullerton:

''No assent of the voters is required by a municipality to enable it to incur a debt within the first limitation.    This it may do without such assent, and it may cause such indebtedness to be evidenced by warrants drawn upon its treasurer, or by bonds issued pursuant to the requirements of the statutes.    The assent of the voters is required only in cases where it is sought to incur a debt within the second limitation.''

That statement of the law is still correct and properly construes the statute quoted, and the county commissioners in this case have requisite authority under that statute.

In this view the lower court correctly sustained the demurrer, and the judgment is affirmed.

MACKINTOSH, MITCHELL, PARKER, and MAIN, JJ., concur.