[No. 42326. En Banc. November 16, 1972.]

MOSES LAKE SCHOOL DISTRICT NO. 161 *et al., Respondents,*
v. BIG BEND COMMUNITY COLLEGE *et al., Appellants.*

552

*Slade Gorton, Attorney General,* and *Robert E. Patterson, Assistant,* for appellants.

*Charles T. Schillberg,* for respondents.

STAFFORD, J.—This is an appeal from a summary judgment in a declaratory judgment action. The trial court held that RCW 28B.50.300, which transferred certain property of school districts to community college districts, was unconstitutional and that the South Campus of Big Bend Community College was vested in plaintiff Moses Lake School District No. 161.[1]

In 1945 school districts were authorized to offer a 13th and 14th year as an extension of their educational program. Laws of 1945, ch. 115. Subsequently they were authorized to establish, operate and maintain community colleges with the approval of the State Board of Education. Laws of 1961, ch. 198. The colleges were to offer 2-year post-high school, college preparatory and vocational-technical curricula. They also were empowered to offer adult education courses and a continuing course of activities designed to fulfill the cultural needs of the community. Admission was open to all residents of the state on equal terms regardless of the school district of their residence.

Laws of 1961, 1st Ex. Sess., ch. 3 authorized the sale of state limited obligation bonds for public school plant facilities. Sections 6 through 12 thereof also authorized and

---

[1]Louie Dendy and James R. Mitchell brought this action for themselves and all others who pay taxes levied by Moses Lake School District No. 161. The school district will be treated as the sole plaintiff.

required school districts, desiring to participate in the benefits thereof, to provide matching funds through the issuance of bonds or through the authorization of excess tax levies or both.

In May 1961, the voters of plaintiff school district approved the issuance and sale of general obligation bonds to assist in the purchase of a site as well as in the construction, furnishing and equipping of a community college. Thereafter, the South Campus of Big Bend Community College was purchased and developed. $792,000 was derived from state bonds and $915,000 from plaintiff's school district bonds. It is agreed that the joint bonded indebtedness was incurred solely for capital purposes and properly expended for the purchase, construction and equipping of the South Campus.

Title to the college's real and personal property was vested in plaintiff. Under the law then in effect, the community college was subject to the school district's control. Plaintiff began operating the South Campus of Big Bend Community College in the fall of 1963 and continued to do so until the Community College Act of 1967 became effective. The act is primarily codified in RCW 28B.50.

The basic educational and vocational-technical purposes of community colleges were not changed by the new act. RCW 28B.50.020(2). Also, the original policy of open admission to all state residents remained essentially unchanged. RCW 28B.50.090(3)(b). But RCW 28B.50.020 declared that the legislature's purpose was to provide higher education or occupational training for an increasing volume of students by creating a "new, independent system of community colleges" which was designated as a "vital section of our state's higher education system, separate from both the common school system and other institutions of higher learning . . ." RCW 28B.50.020(5).

Chapter 28B.50 repealed school district authority to establish and operate community colleges, and transferred it to community college districts and to boards of trustees. The legislature also vested in defendant State Board of

Community College Education all right, title and interest in real estate and other school district assets which had been obtained with state and local funds appropriated or budgeted for community college purposes. RCW 28B.50.300.[2] No provision was made to compensate school districts for the transfer of assets or to adjust their liability for outstanding local general obligation bonds. On the contrary, RCW 28B.50.600 reaffirmed all contracts between local school districts and their bondholders.[3]

This resulted in the transfer of plaintiff's administrative authority to defendant Big Bend Community College District No. 18.[4] Among the assets transferred, without provision for compensation or adjustment of liabilities, was the South Campus.

Plaintiff challenged the legislature's power to transfer public property from one public educational entity to another without providing either for compensation or for adjustment of local school district liabilities. The trial court

---

[2]RCW 28B.50.300 as enacted in 1967 provided in pertinent part:

"Title to or all interest in real estate, choses in action and all other assets, including but not limited to assignable contracts, cash, deposits in county funds (including any interest or premiums thereon), equipment, buildings, facilities, and appurtenances thereto held as of the date of passage of this act by or for a school district and obtained identifiably with federal, state or local funds appropriated for community college purposes or post-high school vocational educational purposes, or used or obtained with funds budgeted for community college purposes or post-high school vocational educational purposes, or used or obtained primarily for community college or vocational education purposes, shall, on the date on which the first board of trustees of each district takes office, vest in or be assigned to the state board for community college education: . . ." Note: The above cited portion of RCW 28B.50.300 was reenacted in Laws of 1971, ch. 81, § 73 without significant change.

[3]RCW 28B.50.600 provides:

"Whenever a common school board has contracted to redeem general obligation bonds used for the construction or acquisition of facilities which are now to be under the administration, control and occupancy of the community college district board, the common school board shall continue to redeem the bonds in accordance with the provisions of the bonds."

[4]For the purpose of simplification, Big Bend Community College District No. 18 will be treated as the sole defendant.

granted plaintiff's motion for summary judgment declaring RCW 28B.50.300 to be unconstitutional and holding that the South Campus remained vested in plaintiff. Defendant appeals.

██ Basic to our consideration of the constitutionality of RCW 28B.50.300 is the rule that the state constitution is a limitation upon the power of the legislature rather than a grant thereof. Insofar as legislative power is not limited by the constitution it is unrestrained. *Yelle v. Bishop,* 55 Wn.2d 286, 297, 347 P.2d 1081 (1959); *Union High School Dist. 1 v. Taxpayers of Union High School Dist. 1,* 26 Wn.2d 1, 7, 172 P.2d 591 (1946); *Litchman v. Shannon,* 90 Wash. 186, 192, 155 P. 783 (1916). It is an equally elementary principle of constitutional law that a statute is presumed to be constitutional unless its unconstitutionality clearly appears. *Union High School Dist. 1 v. Taxpayers of Union High School Dist. 1, supra. See* cases cited therein.

The threshold question is whether RCW 28B.50.300 is violative of article 8, section 6 (amendment 27) of the state constitution.[5] Plaintiff argues, in support of the trial court's summary judgment, that the statutory transfer of assets causes school district funds to be used for other than school district purposes thus contravening the above-mentioned constitutional provision. We do not agree.

Article 8, section 6 (amendment 27) neither purports to define school district purposes nor to limit legislative power to designate the nature thereof. It requires only that at the time the indebtedness is *incurred* the purpose thereof be (1) a legislatively declared municipal purpose, *i.e.,* such as for a school district, city, town or county (*Rust v. Kitsap County,* 111 Wash. 170, 189 P. 994 (1920); *Lancey v. King County,* 15 Wash. 9, 45 P. 645 (1896)); (2) that the purpose

---

[5]Article 8, section 6 (amendment 27) of the Washington State Constitution reads in pertinent part:

"No . . . school district . . . shall . . . become indebted in any manner to an amount exceeding . . . *Provided,* That no part of the indebtedness allowed in this section shall be *incurred* for any purpose other than strictly . . . school district . . . purposes: . . . ." (Italics ours.)

be public in nature (*Rust v. Kitsap County, supra*); and (3) for the purpose of providing benefits to the local inhabitants (*Lancey v. King County, supra*).

■■ In this vein then, it must be remembered that a school district is a creature of the legislature. It exists solely for public purposes and may exercise only those powers expressly granted by the legislature, those necessarily implied or incident to the powers granted, and those essential to the legislature's declared purpose. *Juntila v. Everett School Dist. 24*, 178 Wash. 637, 35 P.2d 78 (1934); *Seattle High School Chapter 200 v. Sharples*, 159 Wash. 424, 293 P. 994, 72 A.L.R. 1215 (1930). Thus, plaintiff could have acquired the South Campus only in its public capacity, as authorized by the legislature. We can only conclude that at the time plaintiff's indebtedness was *incurred* it was incurred for a school district purpose, public in nature, pursuant to Laws of 1961, ch. 198. The public nature of plaintiff's acquisition of the South Campus is emphasized in Laws of 1947, ch. 266, § 6, p. 1107, in effect at the time:

> A school district shall constitute a body corporate and shall possess all the usual powers of a corporation for *public purposes, and in that name and style* . . . may purchase, hold, and sell personal property and real estate . . .

(Italics ours.) Further, as we stated in *State ex rel. Bellingham School Dist. 301 v. Clausen*, 109 Wash. 37, 41-42, 186 P. 319 (1919):

> Whether or not such districts shall possess the power to borrow money and issue negotiable bonds evidencing their debts so created, is wholly a matter of legislative will.

Plaintiff does not seriously suggest that the overall purpose did not contemplate or actually provide benefits to the local inhabitants at the time the indebtedness was incurred. Thus, at the time the indebtedness was *incurred* all three constitutional requirements were met.

Finally, it is not material to a consideration of this constitutional provision that the instrumentality of government

which incurs the indebtedness retain its ownership and control. *State ex rel. Bd. of Comm'rs v. Clausen,* 95 Wash. 214, 163 P. 744 (1917); *Lancey v. King County, supra.*

■ This brings us logically to the question of whether RCW 28B.50.300 violates article 1, section 10 of the United States Constitution (*i.e.,* "No state shall . . . pass any . . . law impairing the obligation of contracts . . ."), the Fourteenth Amendment thereof (*i.e.,* "nor shall any state deprive any person of . . . property, without due process of law . . ."), or article 1, section 16 (amendment 9) of the Washington State Constitution (*i.e.,* "No private property shall be taken . . . for public or private use without just compensation having been first made . . ."). We hold that the foregoing provisions are not violated.

*Hunter v. Pittsburgh,* 207 U.S. 161, 178-79, 52 L. Ed. 151, 28 S. Ct. 40 (1907), is dispositive of plaintiff's asserted violation of the two foregoing provisions of the federal constitution. Although a possible exception is made for municipal corporations holding property in a private capacity, the United States Supreme Court makes it clear that political subdivisions of a state are created as convenient agencies for exercising such governmental powers of the state as may be entrusted to them. Thus, the state may, at its pleasure, modify or withdraw such powers, may take without compensation such property, hold it itself, or vest it in other agencies. *Hunter* goes on to say at page 179:

> All this may be done, conditionally or unconditionally, with or without the consent of the citizens, or even against their protest. *In all these respects the State is supreme, and its legislative body, conforming its action to the state constitution, may do as it will, unrestrained by any provision of the Constitution of the United States. Although* the inhabitants and property owners may by such changes suffer inconvenience, and *their property may be lessened in value by the burden of increased taxation, or for any other reason, they have no right by contract or otherwise in the unaltered or continued existence of the corporation or its powers, and there is noth-*

*ing in the Federal Constitution which protects them from these injurious consequences.* The power is in the State and those who legislate for the State are alone responsible for any unjust or oppressive exercise of it.

(Italics ours.) *See also Newark v. New Jersey,* 262 U.S. 192, 67 L. Ed. 943, 43 S. Ct. 539 (1923); *Trenton v. New Jersey,* 262 U.S. 182, 67 L. Ed. 937, 43 S. Ct. 534, 29 A.L.R. 1471 (1923).

In the final analysis, the only individuals possessing a legally enforceable right in connection with the transfer of the South Campus are the holders of the local general obligation bonds. They are not parties to the action and have no need to be. RCW 28B.50.600 has reaffirmed their contractual rights.

Plaintiff asserts article 1, section 16 (amendment 9) of the state constitution specifically prohibits the taking of private property for public or private use without just compensation. In this case, however, *private* property has not been taken. *Public* property has been transferred from one *public* agency to another. Thus, article 1, section 16 (amendment 9) is not applicable. *Cf. Clute v. North Yakima & Valley Ry.,* 62 Wash. 531, 114 P. 513 (1911).

Plaintiff's problem is not unlike that involved in the consolidation of school districts. There, the tangible and intangible property of less populous districts is transferred to larger districts. In *Wheeler School Dist. 152 v. Hawley,* 18 Wn.2d 37, 46, 137 P.2d 1010 (1943), the Moses Lake School District wholly absorbed the Wheeler district and its assets. We held that this transfer of assets together with the fact that the inhabitants of the smaller Wheeler district were subjected to taxation to pay a portion of the Moses Lake district's debts "does not violate constitutional inhibitions against the taking of property without due process of law and the granting of special privileges and immunities."

■ Next, plaintiff contends that RCW 28B.50.300 diverts assets held in trust for "common school" purposes to noncommon school purposes. This, it is argued, violates article 9, section 2 of the state constitution which provides:

PUBLIC SCHOOL SYSTEM. The legislature shall provide for a general and uniform system of public schools. The public school system shall include common schools, and such high schools, normal schools, and technical schools as may hereafter be established. But *the entire revenue derived from the common school fund and the state tax for common schools shall be exclusively applied to the support of the common schools.*

(Italics ours.)

Plaintiff's argument appears to stem from an assumption that the terms "common schools" and "public schools" are synonymous. Using that point of departure, plaintiff urges that *public school funds* are the same as *common school funds*. Plaintiff then draws the conclusion that the funds used to pay for the district's general obligation bonds must, of necessity, be "common school funds." Such use, it is said, would be an improper diversion of "common school funds" to pay for things not devoted exclusively to the support of the common schools, thereby violating article 9, section 2.

Plaintiff's assertion finds no support in the foregoing constitutional provision. On the contrary, article 9, section 2 provides that the public school system shall include "common schools," high schools, normal schools and technical schools. "Common schools" are but one part of the entire public school system. It is neither synonymous with nor inclusive thereof. Further the public funds used to purchase the South Campus or to repay the district's general obligation bonds are not a part of the "common school fund" referred to in the prohibition of article 9, section 2.

The public funds here in question were derived primarily from (1) bonds sold by the state, the proceeds of which were deposited in the public school construction account of the state general fund, and (2) bonds sold by the plaintiff school district, the proceeds of which were deposited in the county treasury to the credit of plaintiff's general school fund. Plaintiff has cited no legislative expression to indicate that the proceeds of either bond issue or their corresponding tax revenues were to be placed to the credit of the permanent "common school fund."

The term "common school fund," as used in article 9, section 2 of the state constitution, has a precise meaning fully explained in section 3 thereof.[6] It has 10 component parts, none of which includes funds of the type here in question. While the instant funds may have been public school funds, none were "common school funds." This is consistent with our prior holding that all school district funds are not necessarily "common school funds" within the purview of article 9, section 2 of the state constitution. *Pacific Mfg. Co. v. School Dist. 7*, 6 Wash. 121, 33 P. 68 (1893).

Next, plaintiff contends that RCW 28B.50.300 violates article 8, section 7 of the state constitution which provides in pertinent part:

No county, city, town or other municipal corporation shall hereafter give any money, or property, or loan its money, or credit to or in aid of any individual, associa-

[6]Article 9, section 3 (amendment 43) provides in pertinent part:

"§ 3 FUNDS FOR SUPPORT. The principal of the common school fund as the same existed on June 30, 1965, shall remain permanent and irreducible. The said fund shall consist of the principal amount thereof existing on June 30, 1965, and such additions thereto as may be derived after June 30, 1965, from the following named sources, to wit: Appropriations and donations by the state to this fund; donations and bequests by individuals to the state or public for common schools; the proceeds of lands and other property which revert to the state by escheat and forfeiture; the proceeds of all property granted to the state when the purpose of the grant is not specified, or is uncertain; funds accumulated in the treasury of the state for the disbursement of which provision has not been made by law; the proceeds of the sale of stone, minerals, or property other than timber and other crops from school and state lands, other than those granted for specific purposes; all moneys received from persons appropriating stone, minerals or property other than timber and other crops from school and state lands other than those granted for specific purposes, and all moneys other than rental recovered from persons trespassing on said lands; five per centum of the proceeds of the sale of public lands lying within the state, which shall be sold by the United States subsequent to the admission of the state into the Union as approved by section 13 of the act of congress enabling the admission of the state into the Union; the principal of all funds arising from the sale of lands and other property which have been, and hereafter may be granted to the state for the support of common schools. The legislature may make further provisions for enlarging said fund."

tion, company or corporation, except for the necessary support of the poor and infirm . . .

We do not agree. The recipient of the so-called prohibited gift, loan or credit is not an individual, association, company or corporation, it is the sovereign state.

Nothing will be gained by restating our discussion of the ultimate power of the sovereign state to create, abolish or consolidate municipal subdivisions. It is sufficient to repeat that it has the power to transfer any created authority, duty, asset or liability from one political subdivision to another. The exercise of such legislative power does not create a gift, loan or grant of credit in violation of article 8, section 7.

■ Finally, plaintiff asserts that RCW 28B.50.600 violates the state constitution. It is argued that the plaintiff is left with an obligation to redeem its general obligation bonds. This, it is said, involves the legislature in the imposition of taxes upon the school district and its inhabitants in contravention of article 11, section 12 of the state constitution which reads in part:

> The legislature shall have no power to impose taxes upon counties, cities, towns or other municipal corporations, or upon the inhabitants or property thereof, for county, city, town, or other municipal purposes . . .

In support of this proposition, plaintiff cites *Clark v. Seiber*, 48 Wn.2d 783, 296 P.2d 680 (1956) and *State ex rel. Latimer v. Henry*, 28 Wash. 38, 68 P. 368 (1902).

Plaintiff's position is not well taken. RCW 28B.50.600 and its related portions in the 1967 Community College Act do not contravene the foregoing constitutional provision or oppose our holdings in *Seiber* or *Latimer*. Rather, plaintiff was empowered by general legislation, *i.e.*, Laws of 1961, 1st Ex. Sess., ch. 3, §§ 6-12, to issue obligation bonds of the district and to levy taxes to redeem them. *Latimer* recognizes that while the legislature may be prohibited from taxing municipalities or their inhabitants for municipal purposes, it may by general law authorize municipalities to collect taxes for ther own general municipal purposes. This

clearly is within the purview of the latter part of article 11, section 12 which provides that the legislature may

> by *general laws*, vest in the corporate authorities thereof, the power to assess and collect taxes for such purposes.

(Italics ours.)

Another extension of plaintiff's argument is that the legislature's action results in the imposition of a tax on municipalities or their inhabitants for *state* purposes. This, however, does not violate article 11, section 12. There is a clear distinction between the imposition of a tax prohibited for *municipal* purposes and the imposition of a tax for *state* purposes. *Clark v. Seiber, supra; Newman v. Schlarb,* 184 Wash. 147, 50 P.2d 36 (1935).

The establishment and maintenance of community colleges throughout the state is primarily a state purpose from which special benefits flow to local municipalities. In the performance of the state's general duties and purposes it is called upon to utilize various political subdivisions upon which it confers powers and imposes such duties as the legislature deems necessary. Such duties may include the requirement that local school districts raise a certain amount in taxes for such state purposes. As pointed out in *Newman v. Schlarb, supra* at 154:

> These local subdivisions are created by the sovereign power of the state and under its paramount authority, with the view, not only of having them administer their own local and internal affairs, but also of having them carry out the policies of the state at large and assist in the accomplishment of the general purposes of the state.
>
> Consequently, the state, through the legislature, may not only require such subdivisions to levy taxes for public purposes, but may also fix the amount to be levied by them, provided that such purposes, though of a general nature and for the benefit of the whole people, result in special benefits to the particular subdivision.

Concerning the state's power to require local school districts to impose taxes for state purposes, *Clark v. Seiber, supra* at 786-87, had this to say:

We agree (assuming always, as pointed out in *Newman v. Schlarb,* that there is a local benefit to justify a tax on a local district or subdivision for a state purpose) that, if the state can require a county to raise a certain amount for a state purpose, it can require a school district to raise a certain amount for a state purpose.

At this point it is of importance to add that we find nothing in the record to indicate that the community college has been removed from the general area. Furthermore, there is nothing to indicate that the general community has, for some reason, ceased to receive the attendant direct and indirect, general and special benefits of the community college. Thus, RCW 28B.50.600 does not violate article 11, section 12 of the state constitution.

The summary judgment is not supportable on any of the legal or constitutional grounds raised by plaintiff. We hold that the South Campus is vested in the defendant and that plaintiff has no reversionary interest therein.

The trial court is reversed and the cause remanded for entry of judgment consistent with this opinion.

HAMILTON, C.J., FINLEY, HALE, NEILL, WRIGHT, and UTTER, JJ., concur.

HUNTER, J. (dissenting)—Under Const. art. 8, § 6 (amendment 27), school district funds can only be used for school district purposes.

In the instant case the $915,000 in funds realized from the sale of $1,066,000 in general obligation bonds of the Moses Lake School District were to be used under the Education Act, Laws of 1945, ch. 115, providing for an extension of high schools to the 13th and 14th grades, and by the Community College Act, Laws of 1961, ch. 198, amending the 1945 enactment authorizing school districts to establish and operate community colleges in these two grades with the approval of the State Board of Education.

With state matching funds the South Campus of the Big Bend Community College was purchased, the college buildings were constructed and equipped by 1963, and operated

by the Moses Lake School District until April 3, 1967, the effective date of the Community College Act, RCW 28B.50. RCW 28B.50.300, which is now being challenged, provides for the transfer of certain property of the school districts to the community colleges without compensation for said property.

The 1967 Act changed the purpose of the use of funds realized from the 1961 bond issue voted by the district. The South Campus of Big Bend Community College was no longer an extension of the Moses Lake high school system to the 13th and 14th grades as a part of the common school system. The language of the act stating the purpose (RCW 28B.50.020(5)) states *inter alia*:

> [I]ndependent, unique, and vital section of our state's higher education system, *separate from both the common school system* and other institutions of higher learning
> . . .

(Italics mine.) Moreover, the 1967 Act removed the operation of the South Campus of Big Bend Community College from the Moses Lake School District to the State Board of Community Colleges.

It is highly probable that the bond election would have failed had the voters of the Moses Lake School District known of this change of purpose at the time of the bond election that the funds would not be used for an extension of the Moses Lake schools to the 13th and 14th grades as a part of the common school system; that the school so funded would not be operated by their own school directors, but by others who were in no way responsible to them for the management and operation of the college; and that the State Board of Community Colleges could even move the South Campus of the Big Bend Community College to some other location, leaving them holding the sack to pay off the bonds for the next 14 years, the remainder of the 20-year obligation.

The 1967 Community College Act has clearly thwarted the purposes for which the people of the Moses Lake School District thought these funds were to be used, which

not only violates Const. art. 8, § 6 (amendment 27), prohibiting the expenditure of school district funds for other than school district purposes, but it also amounts to a taking of property from the taxpayers of the Moses Lake School District without due process of law in violation of the fourteenth amendment to the United States Constitution, and Const. art. 1, § 3.

The State Board of Community Colleges should be required to reimburse the Moses Lake School District the amount of its investment in the South Campus and relieve the taxpayers of the district from the burden of paying off the bonds originally in the amount of $1,066,000 for the remainder of the 20 years, funding a purpose for which they never intended.

ROSELLINI, J., concurs with HUNTER, J.

Petition for rehearing denied January 17, 1973.