[No. 33671. *En Banc.* April 26, 1956.]

CECIL C. CLARK et al., *Appellants*, v. JAKE SEIBER
*et al.*, *Respondents.*[1]

[1]Reported in 296 P. (2d) 680.

*Halverson & Applegate* and *Alan McDonald,* for appellants.

*Don J. Clark,* for respondents Seiber *et al.*

*The Attorney General* and *Keith Grim, Assistant,* for respondent state of Washington.

HILL, J.—This is an action by certain property owners of Yakima county challenging the constitutionality of chapter 253, Laws of 1955, p. 1035, generally referred to as the Ryder act, and seeking to enjoin the collection of taxes raised by levies based upon assessed valuations provided by that act to be the basis for school district taxes.

Two different assessed valuations have heretofore been recognized in this state as the basis for the imposition of *ad valorem* taxes, one for the levy of state taxes and the other for local taxes. The assessed valuation which must be used for local taxes, *i.e.,* for levies made by local authorities for local purposes, is fixed by the county assessor and county board of equalization. *State ex rel. State Tax Comm. v. Redd* (1932), 166 Wash. 132, 6 P. (2d) 619. The other is that used for state tax levies and is arrived at by the state board of equalization, which equalizes the figures certified to it by the assessors of the various counties to the end that the valuation in each county will conform to the determination of the constitution that it be "fifty per centum of the true and fair value of such property in money: . . ." Constitution, amendment 17. (This same standard, of course, guides the county assessors in their work.) That

this equalized valuation might be used as the basis for the levy of state taxes was determined by *State ex rel. Showalter v. Cook* (1933), 175 Wash. 364, 27 P. (2d) 1075.

The assessed valuation of the taxable property in Yakima county (other than public utilities, etc.) on January 1, 1955, as certified by the county assessor, was $92,508,500. As determined by the state board of equalization, it was $125,011,486, over thirty-five per cent more than that established by the local authorities.

Chapter 253, Laws of 1955, authorizes all tax levies made by or for any school district to be based upon the equalized valuation of the taxable property within the district as determined by the state board of equalization, on the theory that such levies are for a state purpose.

Plaintiffs contend that chapter 253, Laws of 1955, is unconstitutional for various reasons; and they allege that the use of the equalized valuation as determined by the state board of equalization has resulted in an increase of $336.86 in taxes on their property in Yakima county over what the tax would be had it been levied on the basis of the assessed valuation as certified by the county assessor. The trial court sustained a demurrer to their complaint and dismissed their action. The plaintiffs appeal.

We shall consider first the appellants' contention that a school district tax is a local tax for a local purpose, and that, as heretofore determined by this court in *State ex rel. State Tax Comm. v. Redd, supra,* the tax must, under the provisions of Art. XI, § 12, of the state constitution, be levied on the assessed valuation as certified by the county assessor.

The respondents seek to avoid the holding of the *Redd* case that levies for local taxes for local purposes cannot be based upon the valuation as equalized by the state board of equalization by reasoning which can be expressed in the following syllogism based upon the holdings of this court. *Major premise*: Property valuations as equalized by the state board of equalization may be used as the basis for state tax levies. *State ex rel. Showalter v. Cook, supra. Minor premise*: All taxes levied by or for school districts, although local taxes, are for state purposes. *Newman v.*

*Schlarb* (1935), 184 Wash. 147, 50 P. (2d) 36. *Conclusion*: Property valuations as equalized by the state board of equalization may be used for the levying of taxes by or for school districts.

The conclusion is patently a *non sequitur*. From the fact that a state tax can be levied upon property valuations as equalized by the state board of equalization, it does not follow that a local tax for a state purpose may be so levied.

However, we do not base our conclusion that chapter 253, Laws of 1955, is unconstitutional on any syllogistic weakness. To put the respondents on the strongest possible ground, we will assume, but not concede, that a local tax levy for a state purpose may be based on the assessed valuation of the property within the district as equalized by our state board of equalization. Having made that assumption, our position is that there is no support, in fact or in any opinion of this court, for the proposition stated in the minor premise, that all taxes levied by or for school districts are for state purposes.

*Newman v. Schlarb, supra,* strongly relied upon by the respondents, is not authority for any such proposition. We there held that, when the state directed the counties to levy a tax sufficient to produce five cents per day for each pupil in attendance in the common schools during the preceding year, the tax levied in conformity therewith was for a state purpose. It is to be noted that no question of assessed valuation was before the court; we were concerned only with a mandate to raise a specific amount of money. Whether the revenue was to be raised by a low millage on a high valuation or by a high millage on a low valuation was immaterial—the amount to be raised was definite and certain, or could be made so, and *was determined by the state.*

We attempt no distinction between the county involved in *Newman v. Schlarb, supra,* and the school district involved in the present case. We agree (assuming always, as pointed out in *Newman v. Schlarb,* that there is a local benefit to justify a tax on a local district or subdivision for a state purpose) that, if the state can require a county to raise a certain amount for a state purpose, it can require a

school district to raise a certain amount for a state purpose. That is not the situation in the present case.

The legislature, in chapter 253 of the Laws of 1955, has for the first time said (a) that, *regardless of who determines the amount, all taxes* levied by a school district are for a state purpose, and (b) that a local tax (it being for a state purpose) can be raised by a levy based on the assessed valuation of property within the district as equalized by the state board of equalization. (We have heretofore indicated that we will assume but not concede (b).)

We direct our consideration to proposition (a).

Heretofore, any local tax that the court has declared to be for a state purpose has been in an amount fixed by the state through its legislature as (1) requiring a county to levy a sufficient tax to raise an amount equivalent to ten dollars for each child of school age in the county (Laws of 1909, chapter 97, title 3, subchapter 9, § 5, p. 322; Rem. Rev. Stat., § 4936) (This tax was never declared to be for a state purpose but we assume it so to be on authority of *Newman v. Schlarb, supra*); (2) requiring a county to levy a tax sufficient to raise an amount equivalent to five cents per day for each pupil in attendance in the common schools of the county (Laws of 1933, chapter 28, § 12, p. 171; Rem. Rev. Stat. (Sup.), § 4936).

The amount of the tax to be levied by or for the school districts within the contemplation of chapter 253, Laws of 1955, will be fixed not by the state but by the directors of the various school districts, and frequently on the basis of millages specifically approved by the voters of the district. The amounts raised will vary from district to district, as will the millages required to raise those amounts. In the absence of any mandate by the state as to the amount to be raised (which was the basis for the decision in *Newman v. Schlarb, supra*), a requisite for a tax for a state purpose is missing and we are dealing only with a local tax for a local purpose.

Further analysis discloses that, apart from the fact that the state has not fixed the amount of the tax to be levied on behalf of the school districts, substantial portions of the

taxes levied by or for school districts are local taxes for predominantly local purposes. To the extent that any discretion is vested in school districts as to what taxes shall be levied and where and how expenditures are to be made, there is local control and autonomy. The taxes that will be raised by levies based on the assessed valuation as provided for in chapter 253 are definitely local in the sense that they cannot be expended outside of the district in which they are raised, either for the benefit of the state or for the benefit of some other district. The state cannot control the amount of a school district budget or, except by certain millage limits, the millage levied to raise the amount of that budget. Nor will the state control the way in which the tax money will be spent, within certain limitations. The state exercises certain controls, such as minimum salary provisions and the requirement that the schools within the district must meet certain minimal educational standards. A very effective but indirect control is made possible by insistence that certain specific requirements must be met before state funds will be available for building and perhaps for other purposes.

Enough has been and will be said to make clear that some matters involved in the construction and operation of the public schools which are reflected in the amount of district taxes could be considered as state purposes only by stretching the imagination to the breaking point. To state an extreme position, whether a school shall have expensive drinking fountains or paper cups beside a faucet is a matter of local and not state concern, at least if the district is paying the bill. There might even be districts that would prefer two or three-storied buildings to the modern trend of having everything on one floor, or that would put major emphasis upon old-fashioned subjects, such as spelling. Such things and the amounts expended therefor seem to us predominantly matters of local concern.

This is neither the time nor the place for a detailed consideration of the somewhat complex relationship between the state, the county, and the school districts so far as schools

are concerned, and our purpose is only to demonstrate that part, at least, of the taxes raised by local school districts are for such predominantly local purposes that by no process of reasoning can they be considered to be for state purposes.

This becomes even more apparent when it is realized that in many instances the millages which districts vote upon themselves beyond the normal constitutional and statutory limits are for construction purposes. In some instances, at least, these represent the triumph of local pride and determination to build and control their own schools despite state recommendations for consolidation which might represent financial savings and lower taxes.

The constitution itself, in amendment 27, which deals with the limitation upon municipal indebtedness, states that no part of the indebtedness allowed by the section shall be incurred *"for any purpose other than strictly* county, city, town, *school district* or other municipal *purposes . . ."* (italics ours), and then gives school districts some additional leeway on indebtedness for capital outlays under certain circumstances. Since school district taxes are, in part at least, to pay indebtedness incurred for "strictly . . . school district or other municipal purposes," the levies must, on the reasoning of the *Redd* case, *supra,* be based upon the valuations fixed by the local authorities and not on those valuations as equalized by the state board of equalization, in the absence of any attempt to segregate between state and local purposes.

The contention that school district levies should be based on the valuation as equalized by the state board of equalization has heretofore been made on behalf of a school district and rejected by this court. In *State ex rel. Tacoma School Dist. No. 10 v. Kelly* (1934), 176 Wash. 689, 30 P. (2d) 638, the Pierce county assessor had fixed the assessed valuation of property in the county at $55,780,370 and the valuation as equalized by the state board of equalization was $64,-860,895. The school district sought to compel the ten-mill levy for schools on the valuation fixed by the state board of equalization. If such millage is for a state purpose now,

it was for a state purpose then; nevertheless, we held that the *Redd* case and the reasons therein stated governed the situation, and that the levy must be based upon the valuation fixed by the county assessor. We approved that holding and quoted at some length from that opinion in *State ex rel. School District No. 37 v. Clark County* (1934), 177 Wash. 314, 31 P. (2d) 897.

Upon both reason and precedent, an act which provides that school district levies which must, in part at least, be for strictly or predominantly local purposes, shall be based upon assessed valuations other than those fixed by the proper local authorities, is a violation of Art. XI, § 12, of the constitution for the reasons more fully set forth in *State ex rel. State Tax Comm. v. Redd, supra.* The declaration by the legislature in § 2 of chapter 253, Laws of 1955, p. 1036, that everything done by a school district is "carrying out a state function for state purposes," must yield not only to the constitutional recognition that there are strictly school district purposes (constitution, amendment 27) but to the facts to which we have already directed attention. *Jensen v. Henneford* (1936), 185 Wash. 209, 217, 53 P. (2d) 607; *Aberdeen Sav. & Loan Ass'n v. Chase* (1930), 157 Wash. 351, 366, 289 Pac. 536, 290 Pac. 697, 71 A. L. R. 232. As said in *Jensen v. Henneford, supra,* an actual purpose cannot be changed into something else by a legislative declaration, "any more than a man can transform his character by changing his attire or assuming a different name."

We recognize that the state has the power, if the legislature should see fit to exercise it, to abolish school districts and operate the schools of the state as a state function divorced from all local control. But as long as the state chooses to permit schools to be operated on a district basis as are "other municipal corporations," the provisions of Art. XI, § 12, of the constitution apply thereto.

We expressly reserve, as being unnecessary to a decision in the present case, the following questions:

1. Whether the assessed valuation as equalized by the state board of equalization can be made the basis for a levy

for so much of a school district tax as the state, by legislative mandate, directs the district to raise.

2. Whether the assessed valuation as equalized by the state board of equalization can be made the basis for a levy by or for a school district if it can be established that the resultant tax is for a state purpose. This is the question to which we have assumed an affirmative answer for the purposes of this opinion.

3. Whether a local tax for a state purpose must be paid into the state treasury to comply with Art. VII, § 6, of the state constitution, which provides: "All taxes levied and collected for state purposes shall be paid in money only into the state treasury."

The judgment of the trial court dismissing the plaintiffs' cause of action is reversed, and the cause is remanded with instructions to overrule the demurrers interposed to the complaint of the plaintiffs.

WEAVER and OTT, JJ., concur.

SCHWELLENBACH, J. (concurring)—I agree with the majority that the act is unconstitutional, but upon another ground. I believe that the act imposes a state tax for a state purpose, and, in so doing, it violates Art. VII, § 6, of the state constitution, which provides:

"All taxes levied and collected for state purposes shall be paid in money only into the state treasury."

The dissent has quoted the entire act. There can be no doubt as to the intention of the legislature. Section 2 states that the education of all children residing within the state is declared to be a state function and that each school district is declared to be carrying out a state function for state purposes. *Newman v. Schlarb* held that the establishment and maintenance of public schools throughout the state is primarily and essentially a state purpose, and that the statute under consideration in that case did not impose a tax upon the county for county purposes, but for state purposes.

RCW 84.48.080, defining the powers of the state board of equalization, provides that it shall

" . . . examine and compare the returns of the assessment of the property in the several counties of the state, and the assessment of the property of railroad and other companies assessed by the tax commission, and proceed to equalize the same, *so that each county in the state shall pay its due and just proportion of the taxes for state purposes* for such assessment year, according to the ratio the valuation of the property in each county bears to the total valuation of all property in the state.

"The board shall classify all property, real and personal, and shall raise and lower the valuation of any class of property in any county to a value that shall be equal and uniform in so far as possible, in every part of the state, for the purpose of ascertaining the just amount of tax due from each county *for state purposes.* . . . " (Italics mine.)

RCW 84.48.090 provides:

"The state board of equalization shall levy the state taxes authorized by law and shall apportion the amount of tax *for state purposes* among the several counties, in proportion to the valuation of the taxable property of the county for the year as equalized by the board." (Italics mine.)

These proceedings are certified to the state auditor, who shall transmit a transcript to each county assessor, "specifying the amount to be levied and collected on the assessment books for state purposes for such year." RCW 84.48.110. The county assessor shall include for extension on the tax rolls, among others, the rates of levies certified to him for state purposes. RCW 84.52.010.

RCW 84.56.280 (Sup. 1955) provides in part:

"Immediately after the last day of each month, the county treasurer *shall pay over to the state treasurer the amount collected by him and credited to the various state funds,* but every such payment shall be subject to correction for error discovered upon the quarterly settlement next following. The county auditor shall at the same time ascertain and report to the state auditor in writing the amounts due to the various state funds. If they are not paid to the state treasurer before the twentieth day of the month he shall make a sight draft on the county treasurer for such amount. . . . " (Italics mine.)

No provision was made in this act for turning the taxes collected over to the state treasurer. This is not a local tax

in the sense that it is levied by the local taxing authorities, who, in so doing, act as agents for the state. As I have already pointed out, the local taxing authorities always levy taxes for state purposes, and, in so doing, they act as agents for the state. However, they are required, under the law, to pay any money collected for state purposes over to the state treasurer.

Respondents, in their brief, state that this act does not purport to impose a tax, nor to assess property for tax purposes; that it simply establishes a procedure for *equalization* of assessed valuations. An examination of the record in this case makes it clear that the purpose and result of the act is to raise additional taxes. Appellants' tax has been increased in the amount of $336.86. We should not wear blinders when we consider this problem. I repeat the title and § 3 of the act:

"AN ACT relating to the valuation of property for purposes of school district tax levies; *and requiring school district tax levies to be imposed* upon property valuations as determined by county assessors and equalized by the state board of equalization; and declaring an emergency." (Italics mine.)

"Sec. 3. All tax levies made by or for any school district shall be based on the assessed valuation of the taxable property within each respective school district, which assessed valuation shall be the value (1) placed upon said property by the county assessor as equalized by the county board of equalization, and by the tax commission in respect to property assessed by it pursuant to chapters 84.12 and 84.16 RCW, (2) and equalized at fifty percent of true and fair value in money by the state board of equalization."

The provisions covering valuation and tax levies are bound together in such a manner that one cannot be considered without the other. A tax levy is a part of the procedure used in the collection of taxes.

The act provides for the imposition of a tax for a state purpose and violates Art. VII, § 6, of the state constitution because no provision is made to remit the taxes collected to the state treasurer.

DONWORTH, J., concurs with SCHWELLENBACH, J.

ROSELLINI, J. (dissenting)—Chapter 253, Laws of 1955, p. 1035, commonly known as the Ryder act, reads as follows:

"Section 1. The public school system of this state is in critical need of equalized opportunity for local school districts to provide adequately for proper education of the greatly increasing number of children now enrolled and soon to enroll in the public schools of the state. Studies by the legislative counsel have revealed this situation to be largely the result of nonuniform valuations placed upon taxable property contrary to constitutional requirements. This present condition makes it imperative that the state enforce constitutional standards of valuation to effect uniform levels of support of the state's public schools.

"Recognizing its constitutional and paramount duty to make ample provision for the education of children within the state, the state hereby declares its purpose to fulfill that duty enjoined upon it by the Constitution by requiring that the valuation of taxable property within school districts, for purposes of school district taxes, be made to conform to standards required by the Constitution.

"Sec. 2. The education, through the establishment and maintenance of public schools, of all children residing within the state is hereby declared to be a state function, and each school district in the exercise of every activity required by or done pursuant to law in the establishment and maintenance of public schools is hereby declared to be carrying out a state function for state purposes.

"Sec. 3. All tax levies made by or for any school district shall be based on the assessed valuation of the taxable property within each respective school district, which assessed valuation shall be the value (1) placed upon said property by the county assessor as equalized by the county board of equalization, and by the tax commission in respect to property assessed by it pursuant to chapters 84.12 and 84.16 RCW, (2) and equalized at fifty percent of true and fair value in money by the state board of equalization.

"Sec. 4. Each county assessor shall transmit to the state board of equalization before the first day of August next succeeding the adjournment of the county board of equalization, an abstract of the equalized aggregate value of all taxable property within each school district, or part of a school district, situated within his county.

"Sec. 5. Within three days following final adjournment of the state board of equalization, the secretary thereto shall certify to each county assessor the aggregate value, as

equalized by said board, of all taxable property within each school district, or part of a school district, situated within each respective assessor's county.

"Sec. 6. No county shall be required to transfer to school district funds, on account of school district levies on property assessed pursuant to the provisions of this act, amounts in excess of taxes actually collected by the county treasurer.

"Sec. 7. None of the provisions of this act shall be construed to derogate from the exemptions provided for in RCW 84.36.080 and 84.36.090."

As I understand the reasoning of the majority, it can be expressed in the following syllogism. *Major premise*: Levies for local taxes for local purposes cannot be based upon the valuation as equalized by the state board of equalization. *State ex rel. State Tax. Comm. v. Redd*, 166 Wash. 132, 6 P. (2d) 619 (1932). *Minor premise*: If the amount of tax to be levied by a local authority for school district purposes is not fixed by the legislature, the holding of *Newman v. Schlarb*, 184 Wash. 147, 50 P. (2d) 36 (1935), does not apply, and any tax levied by such an authority is levied for local purposes. *Conclusion*: Property valuations as equalized by the state board of equalization may not be used for the levying of taxes by or for school districts.

In the first place, the *Redd* case was not concerned with a question of equalization, but was confined to a consideration of the power of the state board to reassess property *within a county* for local taxation purposes.

"The cases at bar," we said, "do not involve the question of the power under the constitution of the legislature to classify the subjects of taxation to the end that taxation be equal and uniform throughout the state, and that all property be taxed in proportion to its value.

"To secure uniformity in taxation, as our constitution requires, it is essential that the valuation of the subjects upon which the tax is levied be uniform. To accomplish this purpose, boards of equalization have been provided, one object of which is to so equalize assessments that no one part of a taxing district will be required to pay more than its proportionate share of a tax.

" 'Equalization of assessments has, for its general purpose, to bring the assessments of different parts of a taxing district to the same relative standard, so that no one of the

parts may be compelled to pay a disproportionate part of the tax. To accomplish this purpose assessment rolls are equalized by county courts, boards of supervisors or commissioners, *and the aggregate of the county assessments by a state board* established for the purpose. *This is not done by changing individual assessments,* but by fixing the aggregate sums for the several districts at what, in the opinion of the board, they should be, so that general taxes may be levied according to this determination instead of on the assessor's footings.' 1 Cooley on Taxation (3d ed.), p. 784. (Italics mine.)"

But assuming that the legislature may not require a local authority to use the values fixed by the state board of equalization for local purposes, I cannot accept the proposition that the financing of public education is a state purpose if the legislature chooses to fix the *amount* of taxes to be levied, but is a local purpose if the legislature chooses not to fix the amount but only to provide a method of equalizing the valuation on which school taxes shall be based. No such distinction was drawn in *Newman v. Schlarb, supra,* a case which recognized that school taxes serve *both* a state and local purpose. Regardless of that fact, this court held, if a state purpose is served, the legislature may impose a tax or direct its imposition by the local authority. And in *State ex rel. State Tax Comm. v. Redd, supra,* we held that valuation of property is a part of the process of imposing taxes within the meaning of the constitutional provision relied upon by the opponents of the legislation involved in that case, in *Newman v. Schlarb,* and in the case at bar. This constitutional provision is Art. XI, § 12, which reads:

"The legislature shall have no power to impose taxes upon counties, cities, towns or other municipal corporations, or upon the inhabitants or property thereof, for county, city, town or other municipal purposes, but may, by general laws, vest in the corporate authorities thereof, the power to assess and collect taxes for such purposes."

*Newman v. Schlarb, supra,* involved an attack upon the constitutionality of § 12, chapter 28, Laws of 1933, p. 171, which provided, in part, as follows:

"The county commissioners of the several counties of the

State of Washington shall annually at the time of making the tax levy for county purposes, levy a tax on all property subject to taxation in their county, sufficient to produce five cents per day for each pupil in attendance in the common schools of the county during the preceding school year."

It was contended by the plaintiffs in that action that the said statute violated Art. XI, § 12, of the state constitution, which provides that the legislature shall have no power to impose taxes upon counties or other municipal corporations; or, in the alternative, that it violated the uniformity clause of Art. VII, § 1 (amendment 14), and also the provision of intiative measure No. 94, which limited the state levy to two mills.

The court quoted §§ 1 and 2, Art. IX, of the constitution, which provide:

"Sec. 1. It is the paramount duty of the state to make ample provision for the education of all children residing within its borders, without distinction or preference on account of race, color, caste, or sex.

"Sec. 2. The legislature shall provide for a general and uniform system of public schools. The public school system shall include common schools, and such high schools, normal schools, and technical schools as may hereafter be established. But the entire revenue derived from the common school fund and the state tax for common schools shall be exclusively applied to the support of the common schools."

After quoting these constitutional provisions, this court said:

"Thus, at the very inception of our state government, the framers of the constitution recognized what all of the states of the Union have recognized, namely, that the promotion of the general intelligence of the people constituting the body politic is the most effective way of increasing the usefulness and efficiency of its citizens, upon which the safety and welfare of the government depends. 24 R. C. L. 588.

"Pursuant to the constitutional mandate, the state legislature at its first session established a general uniform system of common schools to be administered by state, county, and school district officers. Laws of 1889-90, chapter 12, p. 348, §§ 1 and 2. The same provisions appear in the present

school code adopted in 1909. Rem. Rev. Stat., §§ 4518, 4519 [P.C. §§ 4720, 4721].

"Our decisions have uniformly recognized that, by the declared policy of the state, the duty of educating the children within its borders is fundamental. . . .

"It is apparent that the legislature, acting in pursuance of the constitutional mandate, saw fit to establish a system which, because of its ramifications, was to be administered through the cooperation of state, county, and school district officers. It needs no argument to prove that the system must of necessity be operated and conducted in that way. The state, being engaged in the exercise of a paramount duty could, of course, select any method that it saw fit in order to discharge that duty. Consequently, it reserved to the proper state officers the general supervision of the system and entrusted to its various political subdivisions certain functions and details in which they were particularly interested and concerned.

"The establishment and maintenance of public schools throughout the state is primarily and essentially a state purpose, from which local and special benefits are expected to, and do, flow to the counties and the various municipalities of the state. In the performance of such general duties and purposes, the state calls upon and utilizes its constituent political agencies and for such purposes confers such powers and imposes such duties upon them as it deems necessary. These local subdivisions are created by the sovereign power of the state and under its paramount authority, with the view, not only of having them administer their own local and internal affairs, but also of having them carry out the policies of the state at large and assist in the accomplishment of the general purposes of the state.

"Consequently, the state, through the legislature, may not only require such subdivisions to levy taxes for public purposes, but may also fix the amount to be levied by them provided that such purposes, though of a general nature and for the benefit of the whole people, result in special benefits to the particular subdivision. [Citing cases.]

*"We hold, therefore, that the purpose of education is not merely a county purpose, but rather a state purpose, with local benefits to the county, meeting both state and local needs. The statute, Rem. 1935 Sup., § 4936, does not impose a tax upon the county for county purposes, but for state purposes.* Hence the statute does not violate Art. XI, § 12, of the state constitution." (Italics mine.)

See, also, *Rauch v. Chapman,* 16 Wash. 568, 576, 48 Pac. 253; *School Dist. No. 20, Spokane County, v. Bryan,* 51 Wash. 498, 502, 99 Pac. 28, and *State ex rel. School Dist. No. 37, Clark County, v. Clark County,* 177 Wash. 314, 31 P. (2d) 897. A reading of the *Clark County* case does not disclose whether the contention was made that the valuation for school tax purposes should be that fixed by the state board of equalization, and the question is not discussed. It was assumed in *State ex rel. Tacoma School Dist. No. 10 v. Kelly,* 176 Wash. 689, 30 P. (2d) 638, that school district taxes are levied for a local purpose. Both of these cases, cited by the majority as supporting its conclusion that the legislature may not require state equalization of property valuations for school district purposes, were decided prior to our decision in *Newman v. Schlarb, supra,* and consequently, in so far as they are contrary to that decision, they have been overruled *sub silentio.*

The majority assume that the taxes levied by the school districts under the present system are disbursed and spent for purposes different from those for which the taxes levied under the 1933 act (held constitutional in *Newman v. Schlarb*), were spent. There is nothing in the record to indicate that there has been a change in the uses made of school funds, nor is such a contention made by any of the parties to this suit. If the education of the children of this state was a state purpose in 1933, it is still a state purpose.

The only difference between the situation under the 1933 act and the situation at the present time is that under the 1933 act the county was required to levy a tax sufficient to produce five cents per day per pupil, whereas, since the repeal of that act, the amount of tax to be levied is discretionary within the 12-mill limit.

However, the amount of state funds which is made available to a school district under RCW 28.41.060 is reduced if the district has failed to levy the maximum tax allowed by law, based on a valuation of fifty per cent of the true and fair value of the property located within the district. In other words, the amount of state funds made available to

the district depends on the amount of taxes raised within the district. Thus, the legislation indirectly regulates the amount of taxes to be levied, and it was in aid of this regulation that the Ryder act was passed. If the constitution permits a direct regulation of the taxes to be levied by a county or school district for school purposes, I see no reason why an indirect regulation should be held unconstitutional.

The state legislature may impose a tax on or direct the imposition of a tax by a county, city, town, or other municipal corporation, or upon the inhabitants or property thereof, for purposes of education. *Newman v. Schlarb, supra.* The raising or lowering of assessed valuations is a step in the imposition of a tax. *State ex rel. State Tax Comm. v. Redd, supra.* In my opinion, whether we extend the holding of that case to include the equalization process, or whether we conclude that equalization of assessed valuations is not the imposition of a tax, the state legislature may, through its agency, the state board of equalization, equalize the assessed valuation of property for school tax purposes.

Judge Schwellenbach, in his concurring opinion, states that the act is unconstitutional because it does not provide that the taxes collected shall be remitted to the state treasurer. I do not see the necessity of such a provision in a statute which does not purport to provide for the collection of taxes and the payment over to the proper agency of the funds collected. If the act provided that taxes collected for school purposes should *not* be remitted to the state treasurer, or if it provided that they should be collected and remitted to some other agency, I would see the merit in this contention. As the act stands, however, it makes no provision for the collection and handling of taxes, except that in § 6 there is an implied reference to the taxing procedures provided for in RCW 28.44, 84.52 and 84.56. Assuming that this provision, by reason of this implied reference, is contrary to Art. VII, § 6, of the constitution, it appears to be surplusage. It is only remotely related to the equalization process, if it is related to it at all. An act cannot be declared unconstitutional in its entirety by reason of the fact that some one or more of its provisions is uncon-

stitutional, unless the constitutional and unconstitutional provisions are unseverable and are so intimately connected and interdependent in their meaning and purpose that it could not be believed that the legislature would have passed the one without the other, or unless the part eliminated is so intimately connected with the remainder of the act that the elimination would render the remainder incapable of accomplishing the purposes of the legislature. *Unemployment Compensation Department v. Hunt,* 17 Wn. (2d) 228, 135 P. (2d) 89, and cases cited therein.

If there exists a valid objection to the manner in which school funds are held and disbursed, it should be directed to the statutory provisions pertaining to these matters, and of these the appellants do not complain. Since 1889, school taxes have been paid to the county treasurer, who retains them as custodian after crediting them to the proper school funds. If the appellants' argument here has any validity, the handling of all school taxes collected by the counties is contrary to the provisions of the state constitution and has been since the date that instrument was adopted.

The judgment should be affirmed.

HAMLEY, C. J., MALLERY, and FINLEY, JJ., concur with ROSELLINI, J.

June 7, 1956. Petition for rehearing denied.