[No. 42888.    En Banc.    December 13, 1973.]

E. ALBERT MORRISON *et al., Appellants,* v. F. C. RUTHERFORD *et al., Respondents.*

*E. Albert Morrison,* pro se.

*John C. Merkel, Prosecuting Attorney,* for respondents.

BRACHTENBACH, J.—This case represents still another chapter in the battle by taxpayers whose real estate taxes

have been increased substantially as a result of the cyclical revaluation programs of the county assessors.

Plaintiffs' unimproved Kitsap County property was included in the first phase of a systematic plan of revaluation. In their attack upon the revaluation and resulting increased taxes, plaintiffs rely principally upon the fact that identical land of equal market value immediately adjacent to plaintiffs' land, but not included in the first phase, was appraised by the assessor at one-half of the value placed on plaintiffs' property. Therefore, plaintiffs' taxes were twice those imposed on identical land of equal value.

Plaintiffs contend that the imposition of such grossly disparate taxes by defendants, the assessor and treasurer of Kitsap County, denies plaintiffs the equal protection of the laws guaranteed by the fourteenth amendment to the United States Constitution and further violates Const. art. 7, § 1 (amendment 14) that "All taxes shall be uniform upon the same class of property . . ."

The trial court found that the Kitsap County assessor has recently achieved a 4-year cyclical program of revaluation and will be able to maintain such 4-year cycle if aided by state funds. The staff and budget of the assessor are inadequate to allow an annual review of the entire county. The valuations obtained are posted currently as opposed to holding them back until a county-wide revaluation can be achieved. Thus, the revaluations for the first quarter of the property revalued by the assessor in the first year of the program were immediately placed on the tax rolls. This first quarter included the plaintiffs' land.

The trial court further found a marked inequality between the valuation for tax purposes established for plaintiffs' property and the valuation for tax purposes of the property in an adjoining section. However, the court found this to be due not to arbitrary, capricious or intentional discrimination by any Kitsap County official, but rather due to a lack of adequate funds to engage a staff sufficient to reappraise the entire county in any one year. The trial court finally found that the revaluation program of the

Kitsap County assessor is being conducted, orderly and pursuant to a regular plan.

Concluding that the assessor's program is compatible with Const. art. 7, § 1 and the equal protection clause, the trial court denied plaintiffs' claim for refund of the taxes paid under protest. We affirm.

Plaintiffs recognize that in *Carkonen v. Williams*, 76 Wn.2d 617, 458 P.2d 280 (1969), we put the stamp of constitutional approval upon the 4-year cyclical program being undertaken by the assessors in cooperation with the Department of Revenue and financed in part by the legislature. In *Carkonen* it was noted that disparate underassessing, inequities, and imbalances in the property tax structure were due at least in part to the volume of work of the assessors and to limited staffs and budgets. The court concluded that a systematic, nondiscriminatory cyclical revaluation program is valid and, in effect, the only practical solution to the problem.

Plaintiffs, however, attempt to distinguish *Carkonen* on the basis that the disparity in that case was minimal compared to the 100 percent difference in taxes on their land compared to identical property of equal value. Plaintiffs' argument is appealing. Article 7, section 1 does not speak of uniformity as to 25 percent of the property in one phase of a 4-year cycle; rather, this constitutional provision requires uniform taxation upon the "same class of property." Nonetheless we still believe *Carkonen* to be correct in its recognition of the practical necessities of a systematic nondiscriminatory 4-year program to correct the existing inequities in assessment practices.

Once the 4-year program is completed, however, there is no more room in the constitution for anything less than full application of the constitutional mandate of uniformity. Once uniformity of valuation is achieved, it must be maintained. We emphasize the plain and clear language in *Snohomish County Bd. of Equalization v. State Dep't of Revenue*, 80 Wn.2d 262, 264, 493 P.2d 1012 (1972):

[T]he assessment at 50 per cent of true and fair value in

money is mandatory. After the expiration of the 4-year cycle, no further deviation will be tolerated.

It must follow that after the expiration of the 4-year cycle, all assessments *must* be at 50 per cent of the true and fair value of the property.

The surface appeal of plaintiffs' argument disappears in light of the fact that their property has enjoyed the benefits of under appraisal longer than the property with which comparison is made. Plaintiffs' property had been last appraised in 1963 while the comparison property had been revalued in 1966. These facts were considered, and properly so, by the assessor in selecting property to be revalued in phase one. It is apparent that in a 4-year cycle there will be substantial disparities between properties which have been revalued and those not yet reappraised. That is the unhappy position in which plaintiffs find themselves. The holding of *Carkonen v. Williams, supra,* is that such disparity, per se, violates neither article 7, section 1 of the state constitution nor the equal protection clause of the federal constitution.

Since the trial court found that the assessor's revaluation program was being conducted on a 4-year cyclical program, orderly and pursuant to a regular plan, and not in an arbitrary, capricious or intentionally discriminatory manner, we must and do affirm the judgment.

HALE, C.J., and FINLEY, ROSELLINI, HUNTER, HAMILTON, STAFFORD, WRIGHT, and UTTER, JJ., concur.