[No. 42635. En Banc. January 31, 1974.]

RANDOLPH C. VALENTINE *et al., Respondents,* v. KENNETH D. JOHNSTON, JR., *et al., Appellants.*

*Slade Gorton, Attorney General, Timothy R. Malone,*

*Senior Assistant, William D. Dexter, Assistant,* and *Ronald L. Hendry, Prosecuting Attorney,* and *Michael B. Hansen, Deputy,* for appellants.

*E. Albert Morrison* and *Kenneth S. Kessler,* for respondents.

BRACHTENBACH, J.—An Eighteenth Century French maxim defines taxation as the art of so plucking the goose as to procure the most feathers with the least amount of hissing. Since the commencement of a program of revaluation of real property by the county assessors, the goose has been hissing—louder and with more frequency.

Initially some background of the assessment procedure is necessary to place in focus the nature of this litigation. The county assessor, each year, prepares an assessment roll of all real estate in the county. This listing of property and placing valuations thereon is to be completed by May 31 of each year and may reach back to June 1 of the prior year. RCW 84.40.040. Thereafter the taxes are levied against the assessment roll, RCW 84.52, and the treasurer is authorized to collect them. RCW 84.56.010. Thus what might be called the 1970 assessment roll is the basis for taxes payable in 1971. When we refer to taxes of a particular year we mean taxes payable in that year, unless otherwise indicated.

The Pierce County Assessor undertook a 4-year cyclical revaluation program financed in part by grants from the Department of Revenue. The department approved the initial grant for the 4-year revaluation program on August 7, 1969. By staff work and contract appraisals some 57,242 parcels were revalued in phase 1, that is the assessment year of June 1, 1969, to May 31, 1970. This represented about 35 percent of all the parcels of real estate in Pierce County. It is taxes arising from the revaluations in phase 1, payable in 1971, which are involved here. Remembering that it is the real property taxes payable in 1971 that are in issue, we must examine, interpret and apply Laws of 1971,

1st Ex. Sess., ch. 288, § 8, the so-called rollback statute. It provides:

The board of equalization shall reconvene on the first Monday of August for the purpose of equalizing valuations of real property within the county. Such equalization shall be accomplished in the following manner:

(1) The department of revenue shall certify to the board the ratio of the assessed valuation of locally assessed property in the county to the true and fair value of such property, based upon assessed values established without regard to equalization accomplished pursuant to this section (hereinafter referred to as the "tentative county indicated ratio"). The department shall also certify the ratio of the assessed valuation of locally assessed property in those geographical areas in the county which have been revalued pursuant to a cyclical revaluation program approved by the department of revenue to the true and fair value of such property (hereinafter referred to as the "revaluation ratio"). If, pursuant to the cyclical revaluation program, land alone or improvements alone have been revalued for any assessment year, the revaluation ratio shall be for land alone, or improvements alone, as appropriate, or such combination thereof as is appropriate. The board shall review the revaluation ratio so certified, and may accept, reject, or modify the ratio.

(2) If the revaluation ratio, as determined by the board, exceeds one hundred and ten percent of the tentative county indicated ratio, the board shall order the assessor, in accordance with the provisions of section 7 of this 1971 amendatory act, to reduce by a uniform percentage the true and fair values of land, improvements, or both as appropriate, within the geographical areas covered by the revaluation ratio by a uniform percentage such that the revaluation ratio shall equal the tentative county indicated ratio. The board shall also order the assessor to make appropriate similar adjustments to properties valued in the same year. For the purpose of administrative convenience, such reductions may be accomplished, in lieu of actual changes in the assessment rolls, by the assessor certifying to the treasurer the percentage adjustment for the geographical areas involved,

on the basis of which the treasurer shall adjust the amount of taxes otherwise payable.

The effective date of this statute was May 21, 1971.

In essence the statute requires a comparison of the ratio of all of the property in the county to its true and fair value with the ratio of the revalued property to its true and fair value.

If the revaluation ratio exceeds 110 percent of the county ratio, the revalued values are to be "rolled back" to equal the county ratio. It is apparent that the procedure is designed to lessen the tax impact upon taxpayers whose property is revalued early in a cyclical program. For taxes payable in 1972, the values of property revalued in phases 1 and 2 (assessment years 1970 and 1971) were rolled back by 13.2 percent. Thus while taxpayers in phase 1 had their revalued assessment values for taxes payable in 1972 rolled back, they did not receive a rollback for 1971 taxes.

The heart of this suit is the contention that the rollback statute must apply to 1971 taxes, resulting from phase 1 revaluations. This is a class action on behalf of all of those phase 1 taxpayers in Pierce County. The trial court, supported by a well reasoned memorandum opinion, rendered a summary judgment in favor of the taxpayers. The trial court held that if the rollback statute were not applied to the 1971 taxes, it would be unconstitutional.

Three of our earlier decisions create the framework in which we consider this case. First, *Carkonen v. Williams,* 76 Wn.2d 617, 458 P.2d 280 (1969), held the cyclical revaluation program to be compatible with constitutional provisions requiring equal protection and uniformity of taxation, *if carried out systematically and without intentional discrimination. Dore v. Kinnear,* 79 Wn.2d 755, 489 P.2d 898 (1971), emphasized that the cyclical program, *in operation,* must be systematic and without discrimination. *Snohomish County Bd. of Equalization v. Department of Revenue,* 80 Wn.2d 262, 264, 493 P.2d 1012 (1972), upheld the rollback statute on the basis that it "does no more than provide for an equitable transition to the required constitutional stan-

dard without discrimination and inequality within each county."

The common thrust and thread of these cases is that the entire revaluation program must be systematic and without discrimination.

If appellants' position were sustained it would mean that phase 1 taxpayers would pay 1 year's taxes based upon fully revalued values while all other taxpayers in the 4-year cycle would benefit from the rollback reduction. That strikes us as neither systematic nor without discrimination.

Appellants, however, argue that a statute will not be held to apply retroactively in the absence of language clearly indicating such legislative intent, citing numerous cases including *Anderson v. Seattle*, 78 Wn.2d 201, 471 P.2d 87 (1970). That case sets forth the full scope of the rule which is that retrospective application must be clearly expressed or must be capable of being *implied* from the language of the statute.

With that in mind we look at the statute. The Department of Revenue is required to certify to the county board of equalization the "ratio of the assessed valuation of locally assessed property in those geographical areas in the county *which have been revalued pursuant to a cyclical revaluation program approved by the department of revenue* to the true and fair value of such property." (Italics ours.)

The phase 1 properties here involved were revalued pursuant to a cyclical revaluation program approved by the Department of Revenue. If the legislature intended to limit the benefits of the rollback scheme to revaluations made after enactment of the statute, it should have said so. Rather we believe that the legislature viewed the 4-year cyclical revaluation program, in its entirety, as a unique period of adjustment from the heretofore chaotic conditions described in *Carkonen v. Williams, supra.* We think its intent was to provide relief to *all* taxpayers in all four phases of the program. Thus we are able to apply the statutory interpretation as set forth in *Anderson v. Seattle,*

*supra,* and find that its retroactive nature is in fact implied.

This conclusion is buttressed by the provision of subdivision (1) of section 8 which refers to revaluation for *any* assessment year.

As a matter of interpretation of legislative intent, we find that Laws of 1971, 1st Ex. Sess., ch. 288, § 8, must apply to all four phases of a cyclical revaluation program approved by the Department of Revenue. Any other interpretation and application would lack the systematic nondiscriminatory features mandated by the constitution and the decisions of this court.

Respondents have cross-appealed, contending that the phase 1 revaluation program was invalid, alleging that the assessor in fact did not reappraise in the assessment year 1970 all of the parcels indicated as being in phase 1. The record is deficient in that respect, the trial court held against respondents on that point and respondents concede that the issue is of no consequence if the rollback statute is applicable to those assessments.

The trial court is affirmed.

HALE, C.J., and FINLEY, ROSELLINI, HUNTER, HAMILTON, STAFFORD, WRIGHT, and UTTER, JJ., concur.

Petition for rehearing denied May 16, 1974.