[No. 44072. En Banc. December 8, 1977.]

FRED R. SATOR, ET AL, *Appellants,* v. THE DEPARTMENT
OF REVENUE, ET AL, *Respondents.*

*Graham H. Fernald* and *Perkins, Coie, Stone, Olsen & Williams*, for appellants.

*Slade Gorton, Attorney General, Richard H. Holmquist, Senior Assistant,* and *Matthew J. Coyle, Assistant,* for respondents.

*Don Herron, Prosecuting Attorney for Pierce County,* and *Terrence F. McCarthy, Deputy,* amici curiae.

DOLLIVER, J.—This is an appeal by five taxpayers and property owners in King County from (1) the denial of

plaintiffs' motion for a summary judgment, and (2) the granting of the defendants' motion for a summary judgment dismissing with prejudice the plaintiffs' lawsuit. The appellants filed a complaint in King County Superior Court praying for a declaratory judgment and injunctive relief against the use of the intercounty equalization method as a basis for determining value of property for purposes of the state school ad valorem property tax levy. They sought to have RCW 84.52.065 declared unconstitutional. The statute reads:

> In each year the state shall levy for collection in the following year for the support of common schools of the state a tax of three dollars and sixty cents per thousand dollars of assessed value upon the assessed valuation of all taxable property within the state adjusted to the state equalized value in accordance with the indicated ratio fixed by the state department of revenue.

Appellants Sators and Fischers own taxable real estate. Appellant Boeing Computer Services is a corporation which owns taxable personal property. All appealed the 1974 assessments of their property to the King County Board of Equalization. The board reduced each of the assessments from the original assessment.

In that this case calls into question the validity of the *property tax system, it is* useful to review the procedure by which the tax is ultimately determined.

The county assessor in each county determines the value of property. RCW 84.40.040. The value is adjusted by the county board of equalization to 100 percent of true value. RCW 84.48.010. Personal property is revalued and inspected every year (RCW 84.40.040), and real property every 4 years. RCW 84.41.030, .041.

The Department of Revenue, sitting as the State Board of Equalization, then ascertains the "indicated ratio." This is the ratio of the true and fair value of locally assessed property—both real and personal—within a county, as determined by the assessor and the county board of equalization, to the true and fair value of such property as

determined by the Department of Revenue. RCW 84.48-.080. The "indicated ratio" is used to adjust or equalize the local tax base among the counties of the state in order to assure that each county bears its fair share of taxes for state purposes: the support of the common schools.

The state tax for schools is levied at the rate of $3.60 per thousand dollars of assessed valuation after it is adjusted by the indicated ratio. In 1974, the indicated ratio for King County was 89.08 percent.

The county, instead of expressing the state tax as $3.60 on the state determined assessed valuation, expresses it as an increased dollar rate on the locally determined assessed valuation. Stated otherwise, when taxpayers in King County received their 1974 tax statements in 1975, the state school levy was not expressed on those statements in terms of $3.60 on an increased local assessed valuation. Rather, it was expressed in terms of an increased millage rate—that is, $4.04 on the locally determined assessed valuation. The result on taxpayers in King County is the same, however, whether the adjustment is expressed in terms of an increased assessed valuation or in terms of an increased millage rate. Similarly, tax statements in the other 38 counties reflected the equalization accomplished by the State Board of Equalization for each county, to the end that all property in the state shared the tax burden for the support of the common schools at 100 percent of true and fair valuation as determined by the Department of Revenue as of January 1, 1974.

Based on these facts, the issues raised by appellants are: (1) Does RCW 84.52.065 impose taxation arbitrarily and capriciously in violation of the equal protection clause and constitutional guaranties of uniform taxation? (2) Does RCW 84.52.065 authorize the taking of property without notice and hearing in violation of Const. art. 1, § 3, and U.S. Const. amend. 14, § 1? and (3) Does RCW 84.52.065 violate the "home rule" provisions of Const. art. 11, § 12?

This case is the latest in a line of cases beginning with *State ex rel. Barlow v. Kinnear,* 70 Wn.2d 482, 423 P.2d

937 (1967), concerned with the constitutionality of state statutes and practices relative to the valuation and assessment of property. *Carkonen v. Williams,* 76 Wn.2d 617, 458 P.2d 280 (1969); *Dore v. Kinnear,* 79 Wn.2d 755, 489 P.2d 898 (1971); *Snohomish County Bd. of Equalization v. Department of Revenue,* 80 Wn.2d 262, 493 P.2d 1012 (1972); *Morrison v. Rutherford,* 83 Wn.2d 153, 516 P.2d 1036 (1973); and *Valentine v. Johnston,* 83 Wn.2d 390, 518 P.2d 700 (1974). The instant case, however, represents a decisive break with the past. It is the first to involve an interpretation of amendment 55 to the Washington State Constitution and the statutes enacted attendant to its passage. In each of the other cases cited above, the following constitutional provision was in effect:

> [T]he aggregate of all tax levies upon real and personal property by the state and all taxing districts now existing or hereafter created, shall not in any year exceed forty mills on the dollar of assessed valuation, which assessed valuation shall be fifty per centum of the true and fair value of such property in money . . .

Const. art. 7, § 2 (amendment 17).

In 1972, prior to the actions complained of and in effect at the time of this case, Const. art. 7, § 2 (amendment 55, superseding amendment 17), was adopted by the people. Amendment 55 provides:

> [T]he aggregate of all tax levies upon real and personal property by the state and all taxing districts now existing or hereafter created, shall not in any year exceed one percentum of the true and fair value of such property in money . . .

Under the former constitutional directive, amendment 17, the aggregate tax could not exceed 40 mills on each dollar of assessed valuation, which assessed valuation *"shall be"* 50 percent of the true and fair value. (Italics ours.) Forty mills at 50 percent of true and fair value is, of course, equivalent to 2 percent of true and fair value.

Contrast this with the present constitutional requirement, amendment 55, which directs that the aggregate tax

levies "*shall not* in any year *exceed* one percentum of the true and fair value". (Italics ours.) Thus, those cases cited by appellant, *Snohomish County Bd. of Equalization v. Department of Revenue, supra,* and *Morrison v. Rutherford, supra,* which deal with the problems of cyclic valuation with reference to amendment 17, are not in point.

 Contrary to the assertions of appellants, there is now no constitutional requirement that property be assessed at 100 percent of true and fair value. The constitutional requirement is only that aggregate levies not exceed 1 percent of true and fair value. The questions now are not the percentage of appellants' assessed valuation but whether their *total tax* exceeds 1 percent of true and fair value (*cf. Department of Revenue v. Hoppe,* 82 Wn.2d 549, 512 P.2d 1094 (1973)), and whether, under Const. art. 7, § 1 (amendment 14), the appellants are treated uniformly with other taxpayers in their class. While appellants complain their assessed valuation exceeds 100 percent, they do not allege their tax exceeds 1 percent of the true and fair value of their property. Thus, regardless of what their annual valuation may be, we need only inquire as to whether they are being treated consistent with the "uniform" requirements of amendment 14.

As to real property, this court held in *Snohomish County Bd. of Equalization v. Department of Revenue, supra,* that, when the 4–year cycle had been completed it was mandatory that all assessments be at 50 percent of true and fair value. *Accord, Morrison v. Rutherford, supra.* But this was to meet the *valuation* provisions of amendment 17 (now superseded by amendment 55), not the *uniformity* provisions of amendment 14. As to the validity of the 4–year cycle against the requirements of uniformity, we stated in *Morrison* at page 156:

It is apparent that in a 4–year cycle there will be substantial disparities between properties which have been revalued and those not yet reappraised. That is the unhappy position in which plaintiffs find themselves. The

holding of *Carkonen v. Williams, supra,* is that such disparity, per se, violates neither article 7, section 1 of the state constitution nor the equal protection clause of the federal constitution.

■ What plaintiffs really seem to be urging is that the 4-year valuation cycle program for real property (RCW 84.41) be held unconstitutional as violating amendment 14. This we decline to do. We have repeatedly said that, if the 4-year revaluation program is conducted in an orderly manner and pursuant to a regular plan, and if it is not done in an arbitrary, capricious or intentionally discriminatory manner, then it does not violate the constitution nor does any incidental inequality which flows from it. A program is not invalid just because it is imperfect; minor discrepancies will be tolerated in an otherwise acceptable statewide system. *Carkonen v. Williams, supra; Morrison v. Rutherford, supra. Compare Dore v. Kinnear, supra.*

Although plaintiffs allege they are discriminated against, they make no allegation or showing that the program used by King County and the Department of Revenue fails to meet the tests set out above; they do not assert the mandates of RCW 84.41 have been disregarded; and they do not challenge the accuracy of the indicated ratio as determined by the Department or its methodology.

Absolute uniformity in taxation is a chimera which this court has never sought and which we do not require. The legislature has set up an orderly system for revaluation. RCW 84.41. This system, based on a rational view of the practical realities of budgets, public acceptance and basic fairness has been accepted by this court as a systematic and nondiscriminatory solution to the demands of Const. art. 7, § 1 (amendment 14). If the system is administered in a systematic, nondiscriminatory manner, and we have no allegation or showing to the contrary, then, as here, it will be upheld as meeting the test of amendment 14. Appellants may believe there is a better method of solving the problem of property taxation or a better system, but the forum in which to press that view is the legislature, not this court.

Appellants' other questions relate to the taxation of personal property and whether the combining of the indicated ratios for personal and real property into a single indicated ratio for the county violates amendment 14.

██ Since real property is valued only once every 4 years and personal property is assessed annually at 100 percent of its value, appellants argue there is systematic discrimination and a violation of amendment 14 and the federal and state due process and equal protection clauses. There is no violation of the fourteenth amendment to the United States Constitution. It has long been the rule a legislature may treat personal property as one class and real property as another class for purposes of levying and collecting property taxes. *Thomas v. Gay,* 169 U.S. 264, 42 L. Ed. 740, 18 S. Ct. 340 (1898).

All persons within the classes are being treated equally. There is nothing in the constitution that requires each class of property—real and personal—be assessed at 100 percent of true and fair value or, indeed, assessed at any figure. The only requirement is that each person within the class be treated uniformly. Amendment 14. Appellants do not contend other personal property taxpayers in King County or the state are being treated differently.

We have long held there is no constitutional bar to treating classes of property differently. *State ex rel. Mason County Logging Co. v. Wiley,* 177 Wash. 65, 31 P.2d 539 (1934). Due process and equal protection require that classifications for purposes of taxation have a reasonable basis and not be arbitrary and capricious. *Bates v. McLeod,* 11 Wn.2d 648, 120 P.2d 472 (1941); *Pacific Northwest Annual Conference of United Methodist Church v. Walla Walla County,* 82 Wn.2d 138, 508 P.2d 1361 (1973). Amendment 14 specifically provides, "All real estate shall constitute one class". Placing personal property in a class distinct from real property does not violate these tests.

██ The constitutionality of a combined ratio was challenged in *Burlington Northern, Inc. v. Johnston,* 89 Wn.2d 321, 572 P.2d 1085 (1977). We decided there it was

invalid on other grounds which have no relevance here. While appellants here assert the combined ratio violates the state and federal constitutions, they cite no authority in support of this proposition. Statutes are presumed to be constitutional (*In re Welfare of Harbert,* 85 Wn.2d 719, 538 P.2d 1212 (1975)); the party challenging the statute has the burden of proving unconstitutionality (*State Higher Educ. Assistance Authority v. Graham,* 84 Wn.2d 813, 529 P.2d 1051 (1974)); and the challenging party must prove the statute is unconstitutional beyond a reasonable doubt. *Aetna Life Ins. Co. v. Washington Life & Disability Ins. Guar. Ass'n,* 83 Wn.2d 523, 520 P.2d 162 (1974); *Hoppe v. State,* 78 Wn.2d 164, 469 P.2d 909 (1970). None of these burdens have been met by appellants. We hold the combined ratio used by the Department is not unconstitutional.

It should be noted that, in contrast to *Burlington Northern* where we held with relation to railroads and public utilities that the combined indicated ratio violated statutory intent (RCW 84.12.350 and 84.16.110), here there is no challenge by appellants to the interpretation by the Department of Revenue of the statute (RCW 84.48.080) as allowing a combined ratio. Furthermore, this interpretation has not been challenged by the legislature and the language upon which the Department relies has been reenacted three times since its original passage in 1967. The problems pointed out in *Burlington Northern* relative to a statutory interpretation by the Department allowing a combined ratio do not exist here. We specifically uphold the Department's interpretation of RCW 84.48.080 as allowing the indicated ratios for real and personal property in a county to be combined into a single ratio.

Next we take up the question as to whether RCW 84.52-.065 authorizes the taking of property without notice or hearing in violation of Const. art. 1, § 3, and U.S. Const. amend. 14.

■ It has long been held that no notice or hearing prior to equalization is required by either the state or federal constitution. *State ex rel. Showalter v. Cook,* 175 Wash.

364, 27 P.2d 1075 (1933); *Bi–Metallic Inv. Co. v. State Bd. of Equalization,* 239 U.S. 441, 60 L. Ed. 372, 36 S. Ct. 141 (1915). As is the case here, and as pointed out in *Showalter* at page 379, "In the absence of any statute requiring notice of such hearing, none need be given."

In *Bi–Metallic,* speaking for the court, Justice Holmes wrote, at page 445:

> Where a rule of conduct applies to more than a few people it is impracticable that every one should have a direct voice in its adoption. . . . General statutes within the state power are passed that affect the person or property of individuals, sometimes to the point of ruin, without giving them a chance to be heard. . . . There must be a limit to individual argument in such matters if government is to go on.

Appellants' contention there is no review subsequent to equalization was disposed of in *Island County Comm. on Assessment Ratios v. Department of Revenue,* 81 Wn.2d 193, 500 P.2d 756 (1972). That case involved the constitutionality of the Department of Revenue's "ratio credit" program. The court stated at page 203:

> The fact that these additions to ratio study technique do not constitute a "rule" [under the administrative procedures act (RCW 34.04)] does not mean that a computation based upon such techniques is immune from challenge. *See* RCW 82.03.130(4); 82.03.140.

The statutes set forth in the quoted language from *Island County* clearly authorize appeals to the State Board of Tax Appeals of indicated county ratio determinations of the Department.

Parenthetically, we note respondents are correct in their contention the correct citation above should be RCW 82.03.130(3) rather than (4).

Additionally, taxpayers may seek relief under RCW 84.68.020 which provides a means whereby a refund may be sought for taxes "which are deemed unlawful or excessive by the person, firm or corporation whose property is taxed". While these remedies may present some difficulties to appellants, they are not, as appellants allege, illusory.

■ Not only are appellants' constitutional rights not violated but since adequate administrative remedies cited above are available and as yet have been unused by appellants, this action which seeks declaratory and injunctive relief is premature and inappropriate. *See Wright v. Woodard,* 83 Wn.2d 378, 518 P.2d 718 (1974).

■ Finally, appellants argue RCW 84.52.065 violates the "home rule" provisions of Const. art. 11, § 12, which reads:

> The legislature shall have no power to impose taxes upon counties, cities, towns or other municipal corporations, or upon the inhabitants or property thereof, for county, city, town, or other municipal purposes, but may, by general laws, vest in the corporate authorities thereof, the power to assess and collect taxes for such purposes.

We find this contention to be without merit. Since 1932, this court has held that state equalized assessments may not be the basis for levies of local purpose taxes. *See State ex rel. State Tax Comm'n v. Redd,* 166 Wash. 132, 6 P.2d 619 (1932); *Department of Revenue v. Hoppe,* 82 Wn.2d 549, 512 P.2d 1094 (1973). *But compare Carkonen v. Williams,* 76 Wn.2d 617, 458 P.2d 280 (1969). In *Clark v. Seiber,* 48 Wn.2d 783, 296 P.2d 680 (1956), a statute "requiring school district tax levies to be imposed upon property valuations as determined by county assessors and equalized by the state board of equalization," was held to violate Const. art. 11, § 12. Laws of 1955, ch. 253, p. 1035 (title).

However, while we have held it is violative of article 11, section 12, to impose a state tax for local purposes, we have clearly stated the state may impose a state tax for state purposes. *State ex rel. Showalter v. Cook, supra; Clark v. Seiber, supra.*

A careful reading of the statutes passed during the last several years in a time of rising local special levies for maintenance and operation of the common schools (*Northshore School Dist. 417 v. Kinnear,* 84 Wn.2d 685, 710, 530 P.2d 178 (1974)), shows an entirely new system has been developed for supporting the common schools by the

property tax. RCW 84.52.043, .050, .052, .054 and .065. Here, in contrast to the statute struck down in *Clark v. Seiber, supra,* the amount of the tax to be raised is mandated by the state (RCW 84.52.065), and these moneys so raised are to be placed directly into the general fund of the state treasury. RCW 84.52.067. Thus, the basic support for the common schools is at the state level and with a state tax. Special levies authorized by local school districts are not covered by RCW 84.52.065, and this statute does not purport to authorize the use of state equalized valuation for special levies. Furthermore, in *Department of Revenue v. Hoppe,* 82 Wn.2d 549, 561, 512 P.2d 1094 (1973), we specifically upheld the scheme in Laws of 1971, 1st Ex. Sess., ch. 299, § 25, p. 1715, which, except for irrelevant detail, is identical to RCW 84.52.065.

RCW 84.52.065 violates neither the state nor the federal constitution. The judgment of the trial court is affirmed.

WRIGHT, C.J., and ROSELLINI, HAMILTON, STAFFORD, UTTER, BRACHTENBACH, HOROWITZ, and HICKS, JJ., concur.